1801

CUMBERLAND WOOD PRODUCTS, INC., a Tennessee Corporation, Respondent v. John Clark BENNETT, a/k/a J.C. Bennett, Individually and Tri-Wood Products, Inc., a South Carolina Corporation, of whom John Clark Bennett, a/k/a J.C. Bennett is Appellant.

(417 S.E. (2d) 617)

Court of Appeals

*James W. Poag, Jr.*, West Columbia, *for appellant.*

*Charles H. Raley, Jr.*, Charleston, *for respondent.*

Heard March 9, 1992.

Decided April 6, 1992.

LITTLEJOHN, Acting Judge:

Respondent Cumberland Wood Products, Inc. (Cumberland), brought this breach of contract action to recover an indebtedness against Tri-Wood Products, Inc. (Tri-Wood). Cumberland also sought to pierce the corporate veil of Tri-Wood to hold Tri-Wood's majority shareholder, Appellant John Clark

Bennett, a/k/a J.C. Bennett (Bennett), personally liable. The master, to whom the case was referred with finality, awarded Cumberland a verdict of $171,956.49 and pierced the corporate veil of Tri-Wood to make Bennett individually and personally liable for the verdict. Bennett appeals. We affirm.

## FACTS

In 1978, Bennett and his wife incorporated Tri-Wood which was headquartered in their home. Bennett contributed one thousand dollars as capital.

Bennett was the majority shareholder of Tri-Wood. He owned 70 percent of the outstanding stock while his wife owned the remaining 30 percent. Bennett was the president, the manager, and the only permanent employee of Tri-Wood. His wife was the vice-president, the secretary, and the treasurer. There were no other officers.

Tri-Wood paid Bennett a salary. Instead of the Board of Directors endorsing a resolution to set his salary, Bennett and his wife set it based on what was needed to meet their expenses at home. Bennett "received the majority of the compensation from Tri-Wood while it was in operation."

The Board of Directors of Tri-Wood consisted solely of Bennett and his wife. Tri-Wood neither held formal Board of Directors' meetings nor took minutes of its informal meetings.

Likewise, there were no minutes of annual shareholders' meetings because Tri-Wood did not hold such meetings. Tri-Wood also neither declared nor distributed dividends on its outstanding stock.

In 1985, Tri-Wood had an operating loss of $39,566.77 and an accumulated loss of $47,500. That year, it paid Bennett a salary of $8,174.06. Even though the company was operating at a loss, Bennett made no further capital contributions to Tri-Wood either in the form of cash or otherwise.

In 1986, pursuant to a verbal agreement, Tri-Wood placed purchase orders for wood products with Cumberland. Cumberland, in turn, shipped the products to the receiving party, Greif Bros. Corp. (Greif), as required by the purchase order. Cumberland then invoiced Tri-Wood for the products in the amount of $177,851.57. Cumberland, however, gave Tri-Wood a credit for commissions in the amount of $5,895.08, reducing the debt owed to $171,956.49.

Although Tri-Wood received full payment for the products from Greif, Tri-Wood did not pay Cumberland any portion of these funds. Instead, Tri-Wood applied the funds to other creditors' claims and to "other investments or things that [Tri-Wood] w[as] involved in." In fact, Tri-Wood tendered checks to Cumberland knowing the checks "were bad when [it] wrote them."

Tri-Wood had an operating loss of around $18,600 in 1986 and paid Bennett a salary of $15,563.53. In 1987, Tri-Wood paid Bennett a salary of $4,326.00.

The Secretary of State dissolved Tri-Wood in 1989. At the time of its dissolution, Tri-Wood was aware of Cumberland's claim and of Cumberland being its main creditor. Tri-=Wood had never filed for bankruptcy or any other type of legal protection from its creditors. On dissolution, Tri-Wood's liabilities exceeded its assets. In fact, Tri-Wood "had virtually no assets."

## LAW/ANALYSIS

Bennett does not dispute that Tri-Wood owes Cumberland the debt but rather appeals only the piercing of Tri-Wood's corporate veil to make him individually and personally liable.

*Sturkie v. Sifly*, 280 S.C. 453, 313 S.E. (2d) 316 (Ct. App. 1984) sets forth a two-pronged test to be used to determine whether the corporate entity should be disregarded. The first prong of the test looks to the observance of the corporate formalities by the dominant shareholders and consists of the following eight factors: (1) whether the corporation was grossly undercapitalized; (2) failure to observe corporate formalities; (3) non-payment of dividends; (4) insolvency of the debtor corporation at the time; (5) siphoning of funds of the corporation by the dominant stockholder, (6) nonfunctioning of other officers or directors; (7) absence of corporate records; and (8) the fact that the corporation was merely a facade for the operations of the dominant stockholder. *C.T. Lowndes & Company v. Suburban Gas & Appliance Co., Inc.*, 415 S.E. (2d) 404 (S.C. Ct. App. 1991); *Sturkie*, 280 S.C. at 457, 313 S.E. (2d) at 318.

Based on the facts as set forth above, we hold the preponderance of the evidence establishes the existence of a suffi-

cient number of the eight factors to satisfy the first prong of the test. *See DeWitt Truck Brokers, Inc. v. W. Ray Flemming Fruit Company,* 540 F. (2d) 681 (4th Cir. 1976) (applying South Carolina law) (the conclusion to disregard the corporate entity must involve a number of the eight factors); *Sturkie,* 280 S.C. at 458, 313 S.E. (2d) at 318 (proof of the existence of a sufficient number of the eight factors warranted inquiry into the second prong of the test).

The second prong of the test requires that there be "an element of injustice or fundamental unfairness if the acts of the corporation be not regarded as the acts of the individuals." *Id.* at 457-58, 313 S.E. (2d) at 318. The burden of proving fundamental unfairness requires that the plaintiff establish (1) that the defendant was aware of the plaintiff's claim against the corporation, and (2) thereafter, the defendant acted in a self-serving manner with regard to the property of the corporation and in disregard of the plaintiff's claim in the property. *Id.* at 459, 313 S.E. (2d) at 319.

Here, Bennett admitted he was aware of Cumberland's claim against the corporation. Yet instead of paying the claim, he continued to allow Tri-Wood to pay him a salary which he admitted was determined by his needs at home. We also note automobiles valued in excess of $23,000 were listed as assets for Tri-Wood in the years 1985 and 1986.

Additionally, Tri-Wood used the money that was paid by Greif for Cumberland's products to pay other creditors and "for other investments or things." *Cf. Federal Deposit Insurance Corp. v. Sea Pines Company,* 692 F. (2d) 973, 977 (4th Cir. 1982) ("The law . . . seems to be settled that when a corporation becomes insolvent, or in a failing condition, the officers and directors no longer represent the stockholders, but by the fact of insolvency, become trustees for the creditors, and that they cannot by transfer of property or payment of cash, prefer themselves or other creditors."), *cert. denied,* 461 U.S. 928, 103 S. Ct. 2089, 77 L. Ed. (2d) 299 (1983). The only attempt Tri-Wood made to pay Cumberland was to knowingly issue it bad checks.

We therefore determine the preponderance of the evidence shows Cumberland would suffer injustice or fundamental unfairness if the separate identity of Tri-Wood, which is now dissolved and insolvent, is not disregarded.

## CONCLUSION

For the reasons indicated hereinabove, we hold the preponderance of the evidence supports piercing Tri-Wood's corporate veil and making Bennett individually and personally liable.

Accordingly, the order of the master is affirmed.

Affirmed.

SANDERS, C.J., and SHAW, J., concur.