23860

MULTIMEDIA PUBLISHING OF SOUTH CAROLINA, INC., d/b/a Greenville News-Piedmont Company, Respondent v. J.R. MULLINS, Harry H. Shaw and Food Stores of Greenville, Inc., d/b/a Sav-A-Lot Food Stores/Greenville Store, Inc. and d/b/a Sav-A-Lot Food Stores of Greenville, jointly and severally, Defendants, of whom J.R. Mullins is, Petitioner.

(431 S.E. (2d) 569)

Supreme Court

*J. Jackson Thomas* and *Craig A. Snook,* both of *Stevens, Stevens, Thomas & Snook, P.A.,* Myrtle Beach, *for petitioner.*

*Dennis H. Smith,* of *Smith & Klose, P.A.,* Surfside Beach, *for respondent.*

Heard March 10, 1993.

Decided May 17, 1993.

HARWELL, Chief Justice:

J. R. Mullins (Mullins), the sole director and shareholder of Food Stores of Greenville (FSG), petitioned for writ of certiorari, alleging that the Court of Appeals erred in affirming the trial judge's application of the "fundamental unfairness" prong of the test for piercing FSG's corporate veil. *Multimedia Publishing of South Carolina, Inc. v. Mullins,* Op. No. 92-UP-079 (S.C. Ct. App. filed April 16, 1992). We disagree and affirm.

## I. FACTS

In 1987, Mullins, the owner or majority shareholder of approximately eighteen corporations across the southeast, incorporated Food Stores of South Carolina (FSSC) and opened two grocery stores in the Myrtle Beach area doing business as

"Sav-A-Lot." In June 1988, Mullins incorporated FSG with $1000.00 in capital for the purpose of opening a third Sav-A-Lot in Greenville. Mullins then instructed Harry Shaw (Shaw), FSG's vice president, to obtain newspaper advertising with the Greenville News-Piedmont (Multimedia). FSG contracted with Multimedia through Shaw and subsequently received advertisement.

Both FSSC stores closed in August and transferred much of their inventory to FSG as an informal intercorporate loan. FSG, operating under the direction of Shaw and Virginia accountant Ken Webb, transferred approximately $144,000.00 in cash and assets to Mullins and corporations in which he was the dominant or sole shareholder, purportedly to repay personal and intercorporate debts owed by FSG. The Greenville Sav-A-Lot closed in November, leaving many creditors, including Multimedia, unpaid.

Multimedia commenced this breach of contract action to recover the balance due on FSG's advertising account. Multimedia alleged that FSG was not responsive to judgment and sought to pierce the corporate veil to hold Mullins, as FSG's sole shareholder, personally liable for the debt. The trial judge pierced FSG's corporate veil and Mullins appealed, alleging that the trial judge misapplied the two-prong test set forth in *Sturkie v. Sifly*, 280 S.C. 453, 313 S.E. (2d) 316 (Ct. App. 1984). The Court of Appeals affirmed. We granted certiorari to review the narrow question whether the Court of Appeals erred in applying the second prong of the *Sturkie* test.

## II. DISCUSSION

In *Sturkie*, the Court of Appeals adopted a two-prong test for piercing the corporate veil. The first prong is an eight factor analysis of the shareholder's relationship to the corporation. The second prong requires that a plaintiff prove the "fundamental unfairness" of recognizing the corporate veil by establishing, among other things, that the defendant was aware of the plaintiff's claim against the corporation. *Sturkie,* 280 S.C. at 459, 313 S.E. (2d) at 319. Mullins alleges that the second prong's requirement that a defendant be "aware" of the claim against the corporation requires proof that he had actual knowledge of the claim. We disagree.

Mullins relies on *Daniels v. Berry,* 148 S.C. 446, 146 S.E. 420 (1929), in which we interpreted the term "aware" to require actual knowledge. In our view, Mullins's reliance is misplaced. The *Daniels* interpretation of "aware" was made in the context of a statute imposing civil and criminal liability on bank directors who accepted deposits while aware of the bank's insolvency.[1] The narrow reading given to the term "aware" in *Daniels* can be attributed to the rule of statutory construction requiring that penal statutes be construed strictly. *See, e.g., State v. Breech,* — S.C. —, 417 S.E. (2d) 873 (1992). Accordingly, *Daniels* is not dispositive of the knowledge required to prove fundamental unfairness under the common-law standard set forth in the second prong of *Sturkie.*

■ Mullins's argument that actual knowledge of a claim is required in order to show fundamental unfairness would necessitate a standard for fundamental unfairness even greater than the standard by which fraud may be found. *See First State Savings and Loan v. Phelps,* 299 S.C. 441, 446, 385 S.E. (2d) 821, 824 (1989) (fraud may be established with either knowledge of falsity or reckless disregard for the truth). Fundamental unfairness can exist in the absence of fraud. *Federal Deposit Ins. Corp. v. Sea Pines Co.,* 692 F. (2d) 973, 976 (1982), *cert. denied,* 461 U.S. 928, 103 S.Ct. 2089, 77 L.Ed. (2d) 299 (1983). It follows that fundamental unfairness may be proved by a lesser showing than the defendant's reckless disregard for whether claims against the corporation exist.

■ It is settled law in South Carolina that when a person has notice of facts as are sufficient to put him on inquiry, and those facts, if pursued with due diligence, would lead to knowledge of other facts, he must be presumed to have knowledge of the undisclosed facts. *Norris v.*

---

[1]S.C. Code Ann. § 3973 (1922) provided:

It shall be a felony for any . . . director . . . of any banking institution to receive any deposits . . . after he shall become aware that such corporation is insolvent; and every officer of such failing corporation shall become personally liable to the amount of such deposits or trusts received by him, or with his knowledge and assent, in any such case, to the person thereby damaged, whether criminal prosecution be made or not. And all persons convicted for felony, as herein provided, shall be punished by imprisonment for a term of not less than one year and by a fine of not less than one thousand dollars.

*Greenville S. & A. Ry. Co.,* 111 S.C. 322, 330, 97 S.E. 848, 850 (1919). In accordance with this standard, we hold that a person is "aware" of a claim against the corporation for the purpose of the second prong of *Sturkie* if he has notice of facts which, if pursued with due diligence, would lead to knowledge of the claim.

Mullins contends, however, that he cannot fairly be charged with knowledge of the claims against FSG because he relinquished all control of FSG's daily operations to others. We disagree.

Mullins's claim that he lacked knowledge because he left the management of FSG to others is the equivalent of urging his own negligence and dereliction of duty as a defense. *See McCarty v. Kepreta,* 24 N.D. 395, 413, 139 N.W. 992, 1000 (1913). A corporate director is chargeable with all matters pertaining to the corporation's affairs, of which he has or should have knowledge in the exercise of the duties required of him as a director. *Gay v. Akin,* 766 P. (2d) 985, 992 (Okla. 1988). The record establishes that Mullins was the sole director of FSG and that FSG opened an advertising account with Multimedia at his direction. We find that knowledge of the Multimedia account gained by Mullins in his capacity as the director of FSG was sufficient to put him on inquiry, which, if pursued with reasonable diligence, would have led to knowledge that the account was unpaid.

Mullins further contends that even if he is charged with knowledge of Multimedia's claim in his capacity as a director of FSG, that knowledge cannot be imputed to him as an individual. We disagree.[2]

Whatever knowledge a party acquired as director, he will be presumed to have as a private individual. *McCarty,* 24 N.D. at 412-13, 139 N.W. at 1000. *See also* 3 W. Fletcher, *Fletcher Cyclopedia of the Law of Private Cor-*

---

[2]Mullins relies on *Equitable Trust Co. of Columbia v. Columbia Nat'l Bank,* 145 S.C. 91, 142 S.E. 811 (1928), where we stated that knowledge imputed to a bank director operated to affect him only as the director of a bank, not as an individual, so as to be imputable to him as an officer of another corporation. *Id.* at 124, 142 S.E. at 821. However, the issue before us in *Equitable Trust* was whether a defendant corporation could impute knowledge to the plaintiff corporation through a common agent for the purpose of obtaining a nonsuit by estoppel. In our view, the statement relied upon by Mullins is limited to the unique facts for which it was issued and, therefore, has no application here.

*porations* § 836 (rev. perm. ed. 1986). Therefore, any knowledge imputed to Mullins in his capacity as a director can be charged to him as an individual. *Accord* 15 U.S.C. § 78p (1981) (recognizing that information obtained by a director could be used in his capacity as a shareholder). Accordingly, we hold that Mullins was "aware" of Multimedia's claim for the purpose of applying the second prong of *Sturkie.*

The essence of the fairness test is simply that an individual businessman cannot be allowed to hide from the normal consequences of carefree entrepreneuring by doing so through a corporate shell. *Laya v. Erin Homes, Inc.,* 177 W. Va. 343, 352 S.E. (2d) 93 (1986). We conclude that the trial judge correctly applied the "fundamental unfairness" prong of the *Sturkie* analysis, and that the Court of Appeals was correct in affirming his order. The opinion of the Court of Appeals is

Affirmed.

CHANDLER, FINNEY, TOAL and MOORE, JJ., concur.