2403

Jerome E. DUMAS, Appellant v. INFOSAFE CORPORATION and Robert H. Maguire, Defendants, OF WHOM Robert H. Maguire is Respondent.

(463 S.E. (2d) 641)

Court of Appeals

---

*A. Christopher Potts*, of *Brock & Hitchcock*, Charleston, *for appellant.*

*F. Marion Moise, III*, Charleston, *for respondent.*

Heard, Sept. 12, 1995.

Decided Oct. 30, 1995.

HEARN, Judge:

Jerome E. Dumas appeals the circuit court's order refusing to hold Robert H. Maguire personally liable for a judgment for unpaid wages which Dumas obtained against Maguire's com-

pany, InfoSafe Corporation.[1] We reverse and remand.[2]

Maguire formed InfoSafe in 1990 and began operations in the spring of 1991. InfoSafe designed and installed computer software for professional firms. Once installed, InfoSafe trained the customer in use of the software. Maguire was an office (President) and director of InfoSafe, and the sole shareholder of the company's stock.

In August 1991, InfoSafe hired Dumas as its Vice-President of Marketing. Dumas was to devise and implement a sales program, train sales personnel, and assist in advertising for the business. Dumas was to receive a base annual salary of $30,000, plus bonuses and stock options.

In August and September 1991, InfoSafe was without funds to pay Dumas's salary. In November and December 1991, Maguire applied for a $150,000 SBA loan for InfoSafe, and Dumas assisted in preparing the loan package. In the application, InfoSafe stated to the SBA that a portion of the proceeds would be used to pay back wages due to employees. Maguire repeatedly assured InfoSafe's employees, including Dumas, that back wages would be paid upon receipt of the SBA loan proceeds. Dumas continued to work for InfoSafe eight hours per day for five days per week.

As of March 1992 InfoSafe had not received any substantial capital investment or loan. Dumas began to press Maguire about payment for wages. Dumas wrote Maguire a letter stating that upon receipt of the SBA loan proceeds he expected payment from November 1991 to March 1992; however, Dumas agreed to forego any wages from August to November 1991.

Although Maguire received Dumas's letter, neither Maguire nor InfoSafe responded. On March 11, 1992, InfoSafe again tendered a document to the SBA representing that past due wages would be paid form the proceeds of the loan. Later that month the SBA notified Maguire that the loan was going to be approved.

As of June 1992, the SBA loan proceeds had not arrived. In reliance upon Maguire's assurances, Dumas continued to work

---

[1] No respondent's brief was filed.

[2] Because oral argument would not aid the court in resolving the issues, we decide this case without oral argument.

full-time for InfoSafe without receiving pay. On June 23, 1992, InfoSafe and Maguire asked Dumas to sign an agreement whereby Dumas would become a sales agent paid by commission instead of vice-president of marketing. On June 25, 1992, Dumas wrote Maguire and rejected the offer, stating in part:

> Even though I started with Infosafe last August, I agreed, in my letter to you of March 9, 1992, to have wages begin in November 1991. This was included in the S.B.A. papers as accrued wages for you, Vance and me to that point in time (four months). From November 1991 to June 30, 1992, the total back wages are $20,000.
>
> We must come to a payment program for the back wages before other matters can fall into place.

Maguire and InfoSafe received this letter and on June 29, 1992, terminated Dumas.

In September 1992, InfoSafe received the SBA loan for $150,000. Dumas made repeated demands for payment both before and after InfoSafe received these proceeds, but Maguire ignored him. Instead, Maguire used the loan proceeds to repay loans he and his wife extended to InfoSafe, to pay other employees for past due wages, and to pay other creditors.

Dumas brought an action against InfoSafe and Maguire, alleged violation of S.C. Code Ann. Sections 41-10-10 through -110 (Supp. 1994) (the South Carolina Payment of Wages Act), breach of contract and quantum meruit. The jury returned a general verdict for Dumas against both defendants on Dumas's claim under the Act and awarded $20,000 in damages. The trial court subsequently trebled the damages and awarded attorney fees under the Act, bring the total judgment to $70,928.23.

In a posttrial hearing, Maguire sought to be dismissed as a party defendant. Dumas argued the court should disregard InfoSafe's corporate identity and hold maguire liable as its dominant shareholder. Dumas also asserted that under the Act, Maguire was individually liable as an officer of the company because he knowingly permitted InfoSafe to violate the Act. The court rule Maguire was not personally liable and dismissed him from the action. Dumas appeals this order.

## PIERCING THE CORPORATE VEIL

An action to pierce the corporate veil is one in equity. Thus this court may take its own view of the preponderance of the evidence. *C.T. Lowndes & Co. v. Suburban Gas & Appliance Co.*, 307 S.C. 394, 415 S.E. (2d) 404 (Ct. App. 1991); *Sturkie v. Sifly*, 280 S.C. 453, 313 S.E. (2d) 316 Ct. App. 1984).

The court in *Sturkie* adopted a two-prong test for piercing the corporate veil. The first prong is an eight-factor analysis of the shareholder's relationship to the corporation and looks to the observance of the corporate formalities by the dominant shareholders. *Cumberland Wood Prods. v. Bennett*, 308 S.C. 268, 417 S.E. (2d) 617 (Ct. App. 1992) The factors are:

(1) whether the corporation was grossly undercapitalized;
(2) failure to observe corporate formalities;
(3) nonpayment of dividends;
(4) insolvency of debtor corporation at the time;
(5) siphoning of funds of the corporation by the dominant stockholder;
(6) nonfunctioning of other officers or directors;
(7) absence of corporate records; and
(8) the fact that the corporation was merely a facade for the operations of the dominant stockholder.

*Id.* The conclusion to disregard the corporate entity must involve a number of the eight factors, but need not involve them all. *Id.*

The second prong of *Sturkie* requires a plaintiff to prove "an element of injustice or fundamental unfairness if the acts of the corporation be not regarded as the acts of the individuals." 280 S.C. at 457, 313 S.E. (2d) at 318. To prove fundamental unfairness, the plaintiff must establish that (1) the defendant was aware of the plaintiff's claim against the corporation, and (2) thereafter, the defendant acted in a self-serving manner with regard to the property of the corporation and in disregard of the plaintiff's claim in the property. *Id.; Multimedia Publishing of S.C. Inc. v. Mullins*, 314 S.C. 551, 431 S.E. (2d) 569 (1993). The essence of the fairness test is simply that an individual businessman can-

not be allowed to hide from the normal consequences of carefree entrepreneuring by doing so through a corporate shell. *Multimedia Publishing*, 314 S.C. 551, 431 S.E. (2d) 569 (1993).

■ Under our own view of the record, we find sufficient evidence to pierce InfoSafe's corporate veil and hold Maguire individually liable to Dumas for unpaid wages. From its inception, InfoSafe was undercapitalized, failed to hold director's meetings, and did not pay dividends. InfoSafe could not pay the wags of its employees, was insolvent and did not keep adequate corporate records. InfoSafe funds were regularly transferred to Maguire and his wife, allegedly for repayment of certain loans to the company.

Maguire, InfoSafe's president, indicated he made decisions regarding hiring employees. Maguire stated he put nearly $300,000 of his own money into InfoSafe and described himself as an "entrepreneur."

■ The trial court relied heavily upon the fact that Maguire did not perpetrate a fraud upon Dumas. However, for purposes of piercing the corporate veil, fundamental unfairness can exist in the absence of fraud, and may be proved by a lesser showing than reckless disregard. *Multimedia Publishing*, 314 S.C. 551, 431 S.E. (2d) 569 (1993). The record contains an abundance of evidence that although Maguire was aware of Dumas's claims against InfoSafe, Maguire acted in a self-serving manner with regard to InfoSafe's funds available for unpaid salaries and in disregard of Dumas's claim to those funds.

For the reasons stated, we hold the evidence Dumas presented establishes the necessary elements for piercing the corporate veil. Accordingly, we reverse the trial court's ruling denying Dumas's request that Maguire be individually liable for the judgment against InfoSafe.

## LIABILITY UNDER THE PAYMENT OF WAGES ACT

■ Alternatively, Dumas argues the trial court erred in not holding Maguire individually liable pursuant to the South Carolina Payment of Wages Act. We agree. With regard to liability under the Act, the court ruled:

> Regarding application of the *Mullins* case, although it does directly address the factual situation of corporate officer liability under a payment of wages [statute], the

standard of knowingly permitting a corporation to violate a statutory provision to assign individual liability is not the standard established in this jurisdiction. Irrespective of the Court's finding as to the degree of corporate formalities observed, [Dumas] must also prove that an injustice or fundamental unfairness will be promoted, and [Dumas] had not carried this burden. [Maguire] must therefore be dismissed as a party defendant.

The *"Mullins"* case the court referred to is *Mullins v. Venable*, 171 W.Va. 92, 297 S.E. (2d) 866 (1982), which involved the West Virginia Wage Payment and Collection Act. The West Virginia Act requires every "person, firm or corporation" doing business in West Virginia to pay its employees. The West Virginia Court had to construe the phrase "person, firm or corporation" as used in the Act, and stated it was "beyond controversy" that an officer is a person. *Id.*, at 869. The court held that although the Act did not explicitly impose liability on corporate officers, the legislature intended to impose liability on officers in the management of a corporation who knowingly permit their corporation to act in violation of the Act's provisions. *Id.*

Like the West Virginia Act, the South Carolina Payment of Wages Act is remedial legislation designed to protect working people and assist them in collecting compensation wrongfully withheld.[3] The Act provides in pertinent part:

As used in this chapter:

"Employer" means every person, firm, partnership, association, corporation, receiver, or other officer or a court of this State, the State, or any political subdivision thereof, *and any agent or officer of the above classes* employing any person in this State. S.C. Code Ann. § 41-10-10(1) (Supp. 1994) (emphasis added).

\*         \*         \*         \*         \*         \*

When an *employer* separates an employee from the payroll for any reason, the *employer* shall pay all wages due to the employee within forty-eight hours of the time

---

[3] See the preamble to Act No. 944, 1938 S.C. Acts 1886, the predecessor to the Payment of Wages Act (the purpose of the Act was to provide for the effective collection of wage payments by labor in South Carolina).

of separation or the next regular payday which may not exceed thirty days. S.C. Code Ann. § 41-10-50 (Supp. 1994) (emphasis added).[4]

\*      \*      \*      \*      \*      \*

In case of any failure to pay wages due to an employee as required by Section 41-10-40 or 41-10-50 the employee may recover in a civil action an amount equal to three times the full amount of the unpaid wages, plus costs and reasonable attorney's fees as the court may allow. S.C. Code § 41-10-80(C) (Supp. 1994).

All rules of statutory construction are subservient to the one that the legislative intent must prevail if it reasonably can be discovered in the language used, and that language must be construed in light of the intended purpose of the statute. *Focus on Beaufort County v. Beaufort County*, 318 S.C. 227, 456 S.E. (2d) 910 (1995); *see also Liberty Mut. Ins. Co. v. South Carolina Second Injury Fund*, 318 S.C. 516, 458 S.E. (2d) 550 (1995) (the court's primary function in interpreting a statute is to ascertain the intent of the legislature). Applying this rule of construction, we hold the legislature intended to impose individual liability on agents or officers of a corporation who knowingly permit their corporation to violate the Act. To hold otherwise would require us to ignore the words "and any agent or officer of the above classes." These words have appeared in the definition of "employer" in very version of the Act since its first enactment in 1938. *See* S.C. Code Ann. § 41-11-110(1) (1986); S.C. Code Ann. § 40-111(1) (1962); S.C. Code Ann. § 40-111(1) (1952); S.C. Code Ann. § 7034-6(1)(a) (1942); Act No. 944, § 1(a), 1938 S.C. Acts 1886.

Accordingly, we reverse the trial court's ruling dismissing Maguire as a party defendant and direct the trial court to enter judgment against Maguire individually in accordance with the opinion.

_____

[4] S.C. Code Ann. § 41-10-10(2) defines "wages" as "all amounts . . . which are due to an employee under any . . . employment contract." If Infosafe would have paid Dumas all wages due within 48 hours of its receipt of the SBA loan, Infosafe would have complied with Dumas's modified employment contract and therefore satisfied its statutory requirements under the Payment of Wages chapter.

Reversed and remanded.

CURETON and GOOLSBY, JJ., concur.