## 2536

D. Ward WILSON, Decatur W. Wilson, II, Kevin Baltimore and Randy Allen, Respondents v. Richard H. FRIEDBERG and Royal Promotions, Inc., Appellants.

(473 S.E. (2d) 854)

Court of Appeals

---

*Randall H. Johnson,* Santa Monica, Cal., *for appellants.*

*J.W. Cabaniss, of Grimball & Cabaniss,* Charleston, *for respondents.*

Heard May 8, 1996.

Decided July 8, 1996; Rehearing Denied Aug. 22, 1996.

CURETON, Judge:

This appeal involves two separate cases between the same parties which were consolidated for trial. D. Ward Wilson, Decatur Wilson, Kevin Baltimore, and Randy Allen (hereinafter referred to as limited partners) brought these actions against Richard Friedberg, Mary T. Feldman, and Royal Promotions, Inc. (Royal Promotions) as a result of their investments in two limited partnerships, "Shag Musical Review L.P." (Shag Review) and "Fight Night Charleston No. 6 L.P." (Fight Night). The limited partners alleged Royal Promotions was the general partner in both limited partnerships and Friedberg and Feldman acted as agents for Royal Promotions. The limited partners claimed that Royal Promotions failed to manage the limited partnerships in accordance with good business practices and that funds were diverted to other interests of Royal Promotions and Friedberg. They also alleged Royal Promotions failed to provide them with an accurate and complete accounting.

The master calculated the net loss suffered by each limited partnership and allocated a proportionate share of the loss to the limited partners to be deducted from their capital contributions. He then ordered a return of the limited partners' remaining capital contributions and entered judgment for this amount against both Royal Promotions and Friedberg. Friedberg and Royal Promotions appeal.[1] We affirm in part, reverse in part and remand in part.

Each limited partner invested $5,000 in the Shag Review, an original musical review held in Charleston, They also invested $4,000 each in Fight Night, a professional boxing promotion held in Charleston. Friedberg owned all the stock in Royal Promotions and Mary Feldman was the president of the corporation. The Shag Review was held from May 20 through May 25, 1992. Following the production, the limited partners received a report from Royal Promotions indicating a net loss of $20,067.75 after application of their capital investment of $20,000. Fight Night was held on June 26, 1992, and the lim-

---

[1] The master dismissed the actions against Mary Feldman and she is not a party to the appeal.

ited partners received a report indicating a "total loss" of $12,164 after application of their capital investment to the payment of production costs.

As a result of the reported losses, the limited partners attempted to secure income and expense records for the productions. Because they were not furnished information to their satisfaction, the limited partners commenced the instant actions. In both cases, the master concluded there had been substantial errors in reporting expenses and a pattern of commingling of funds between the limited partnerships and other companies owned or controlled by Friedberg. The master held the net losses for Fight Night and Shag Review were $14,512.64 and $18,874.28, respectively, after application of all receipts. The master concluded these losses should be shared between the limited partners and Royal Promotions in the same proportion as net profits were to be shared. He therefore concluded the limited partners' share of the loss from Fight Night was $4,837.57, entitling them to a return of their capital contributions in the amount of $11,162.45. He further found the limited partners' share of the Shag Review loss was $6,291.43 and ordered a return to them of $13,708.57 from their capital investments. Finally, he concluded Friedberg should be held personally liable for payment of these sums to the limited partners since Royal Promotions was Friedberg's alter ego.

I.

Friedberg and Royal Promotions assert the master erred in holding Friedberg personally liable for the judgements against the corporation. We disagree and affirm the master's findings and conclusion on this issue.

The equitable doctrine of piercing the corporate veil is not to be applied without substantial reflection and the party seeking to have the corporate identity disregarded has the burden of proving the doctrine should be applied. *Sturkie v. Sifly*, 280 S.C. 453, 313 S.E. (2d) 316 (Ct. App. 1984). As a general rule, a corporation will be looked upon as a legal entity until sufficient reason to the contrary appears. However, the law will regard the corporation as an association of persons when the notion of the legal entity is used to protect fraud, justify wrong, or defeat public policy. *Id.*

Our courts have developed a two-prong test to be used in determining whether the corporate entity should be disregarded. The first prong of the test looks to the observance of corporate formalities by the dominant shareholder and consists of the following factors: (1) whether the corporation was grossly undercapitalized; (2) failure to observe corporate formalities: (3) nonpayment of dividends; (4) insolvency of the debtor corporation at the time, (5) siphoning of corporate funds by the dominant stockholder; (6) nonfunctioning of other officers or directors; (7) absence of corporate records; and (8) the fact that the corporation was merely a facade for the operations of the dominant stockholder. *Sturkie*, 280 S.C. 453, 313 S.E. (2d) 316; *Multimedia Publishing of South Carolina, Inc. v. Mullins*, 314 S.C. 551, 431 S.E. (2d) 569 (1993); *Cumberland Wood Products v. Bennett*, 308 S.C. 268, 417 S.E. (2d) 617 (Ct. App. 1992); *C.T. Lowndes v. Suburban Gas & Appliance*, 307 S.C. 394, 415 S.C. (2d) 404 (Ct. App. 1991). The second prong of the test requires that there be an element of injustice of fundamental unfairness if the acts of the corporation are not regarded as the acts of the individual. In proving fundamental unfairness, the plaintiff must establish (1) the defendant was aware of the plaintiff's claim against the corporation; and (2) acted in a self-serving manner with regard to the property of the corporation and in disregard of the plaintiff's claim in the property. *Sturkie*, 280 S.C. 453, 313 S.E. (2d) 316. The essence of the fairness test is "simply that an individual businessman cannot be allowed to hide from the normal consequences of carefree entrepreneuring by doing so through a corporate shell." *Multimedia Publishing*, 314 S.C. 551, 556, 431 S.E. (2d) 569, 573.

Royal Promotions was organized in 1991 and Friedberg owns all of its stock. During the time period relevant to this action, the corporation did not own any real property. Also, Royal Promotions did not have any permanent employees, but hired employees on a per diem basis for the various promotions. Royal Promotions has been the general partner in other limited partnerships for promotional events held at the King Street Palace in Charleston. The King Street Palace is owned by Carolina Film South Corporation. Friedberg and his wife own eighty-five percent of the stock in that company. Friedberg prepared the financial reports for

the two limited partnerships. It is also clear that Friedberg commingled funds from several ventures, handled most transactions for the productions in cash, and did not keep adequate records of expenditures. Responses to a March 1, 1993 Request for Production reflect Royal Promotions did not file tax returns for the two years it had been in existence. Viewing the record as a whole, we hold Friedberg stood in a fiduciary relationship with the limited partners and the following conclusion of the master is supported by the evidence:

> This case is based on the fiduciary duty of the general partner to the limited partners. I find that Friedberg and Royal Promotions were one and the same for the operation of Fight Night [and Shag Musical Review] and there would be fundamental unfairness if the acts of the corporation not be regarded as the act[s] of Friedberg.

*See* 18 Am. Jur. (2d), *Corporations*, § 45 (1985) (courts will disregard the fiction that a corporation is a separate legal entity when the corporation is a mere instrumentality of a controlling individual); 59A Am. Jur. (2d), *Partnership*, § 1313 (1987) (those in control of a corporate general partner may, at least under some circumstances, be held personally liable for the debts of the limited partnership); *Anthony v. Padmar, Inc.* — S.C. —, 465 S.E. (2d) 745 (Ct. App. 1995) (the duty of a general partner in a limited partnership to exercise the utmost good faith, fairness and loyalty toward the limited partners is required both by statute and common law).

## II.

Royal Promotions also contends the master erred in finding that the parties' agreement to share profits on a one-third/two-thirds basis was an implied agreement to share losses in the same proportion.[2] Royal Promotions argues the general partner had no obligation for any losses until the limited partners' capital contributions were exhausted.

---

[2] As more fully set forth below, the parties' agreement to share profits from the ventures on a one-third/two-thirds basis was set forth in documents referred to by the parties as "Presentations." In addition, each of the four limited partners signed subscription agreements for the two limited partnerships which provided each would be entitled to one-twelfth of any net profits from the productions after all costs and expenses were paid by the general partner.

We agree with this position and hold the trial court' order misinterprets the agreement between the parties. The trial court correctly treated the "Presentation" documents as part of the partnership agreement. A close analysis of these documents, however, compels a result different from that reached by the master.

As a preliminary matter, we disagree with the master's conclusion that the partnership agreement does not deal with losses and S.C. Code Ann. § 33-42-830 (1990) is therefore applicable. Even if the section is applicable, we think a different result is clearly mandated. Manifestly, the pertinent provision in the presentation document regarding profits covers a situation, not present here, where there are net profits to be divided. Assuming the master is correct that the presentation and subscription agreement do not cover the situation where there is a loss, and resort to § 33-42-830 is thereby required, we nevertheless read the section to require that losses be "allocated on the basis of the value (as stated in the partnership records required to be kept pursuant to § 33-42-60) of the contributions made by each partner to the extent they have been received by the partnership and have not been returned." Here, it is clear that the only contributions to the limited partnerships were made by the limited partners.[3] Thus, a literal application of § 33-42-830 would require all of the losses be absorbed by the limited partners in proportion to their initial contributions. We do not think that result was intended by the parties to the partnership agreement.

We hold the partnership agreement as contained in the subscription agreement together with the presentation for each production, although not a model of clarity, does establish the

---

[3] The limited partners' primary complaint at trial was that the general partner, or Friedberg and Feldman individually, violated their agreement by not injecting into the partnership the same amount of initial contributions as did the limited partners; however, their pleadings do not allege such an agreement and the trial court made no finding regarding theat contention. Moreover, as to any agreement the corporation, Friedberg, or Feldman may have made individually to make capital contributions as limited partners, S.C. Code Ann. § 33-42-820 provides that an agreement by limited partners to make capital contributions is not enforceable unless set out in writing. Finally, the presentation document makes it clear that the initial contributions would come from the limited partners and limits the general partner's distributions to a share of the net profits from the partnership.

manner in which expenses are to be paid, when original contributions are to be returned to the limited partners, and how net profits are to be determined and distributed. Both presentations note "[i]t is anticipated that the limited partnership (partners) financial contribution will cover the initial costs for the production." This provision clearly conveys the parties' intent that the limited partners' contributions would cover all preproduction costs and that the general partner would not be required to make any initial or capital contributions. The presentations then state:

> Ten days after [the productions] all expenses or debts of the partnership shall be paid ... and the assets[4] and any accumulated income, as determined by the General Partners, shall be paid in the following priority:
> (1) Additional monies to cover costs, if any;
> (2) Return of Limited Partnership [partners] original contributions; and
> (3) Distribution of net profits:
> 66⅔ to General Partner; and
> 33⅓ to Limited partners on a pro-rata basis as it relates to their capital investment.

Royal Promotions concedes the requirement to inject additional monies to pay third-party debts associated with the productions under provision (1) above relates only to it as general partner. That being the case, we interpret this partnership document to require all assets received by the partnership, including investment contributions made by the limited partners, be treated as follows. After each production, the general partner would ascertain the costs for the production; if receipts were sufficient to pay those costs, then they would be paid accordingly; if the receipts were not sufficient to pay costs, then the limited partners' investment contributions would be combined with the receipts from the performance(s) to form a source for payment of the production expenses; if this fund source proved insufficient to pay the costs

---

[4] Because each limited partnership appears to have been formed to sponsor a single event, as opposed to carrying on a continuing enterprise, we think the settling of accounts after each production is more in the nature of a distribution of assets under § 33-42-840 than a sharing of losses and profits under § 33-42-830.

of production, then the general partner would be solely responsible for the payment of nay deficiency; in the event there were monies left after payment of all production expenses, then the limited partners would be entitled to a full or pro rata return of their investment contributions; and, finally, should there be monies or assets remaining after the limited partners' investment contributions were returned in full, then such monies or assets would be divided two-third to the general partner and one-third to the limited partners.[5]

We remand to the trial court to recalculate the sum of money due the limited partners based on the formula and/or analysis noted above. We agree with the master's decision relative to the disallowance of certain expenses incurred by the general partner. Accordingly, the order of the trial court is affirmed in part, reversed in part and remanded.

Affirmed in part, reversed in part and remanded.

GOOLSBY, J., concurs.

ANDERSON, J., dissents in separate opinion.

ANDERSON, Judge, dissenting:

I respectfully dissent.

The majority opinion misinterprets the agreement between the parties. The trial court correctly interpreted the agreement between the parties, including an analysis of the "Presentation" documents. I would affirm in part and reverse in part.

### *PIERCING THE CORPORATE VEIL*
Friedberg and Royal Promotions argue the master erred in piercing the corporate veil of Royal Promotions and holding Friedberg personally liable for the judgments against the corporation. I agree and would reverse the master's conclusion on this issue.

"At the outset, it is recognized that a corporation is an entity, separate and distinct from its officers and stockholders, and that its debts are not the individual indebtedness of its

---

[5] Friedberg testified essentially that this was his interpretation of the partnership agreement.

stockholders." *DeWitt Truck Brokers, Inc. v. W. Ray Flemming Fruit Co.*, 540 F. (2d) 681, 683 (4th Cir. 1976).

The South Carolina Supreme Court has recognized that the corporate entity may be disregarded in certain situations. *Baker v. Equitable Leasing Corp.*, 275 S.C. 359, 271 S.E. (2d) 596 (1980). An action to pierce the corporate veil is equitable in nature. Thus, this court may determine the facts in accordance with its own view of the preponderance of the evidence. *Dumas v. InfoSafe Corp.*, — S.C. —, 463 S.E. (2d) 641 (Ct. App. 1995). "However, 'piercing the corporate veil' is not a doctrine to be applied without substantial reflection." *Baker*, 275 S.C. at 367, 271 S.E. (2d) at 600. Generally, courts are reluctant to "disregard the integrity of the corporate entity." *Sturkie v. Sifly*, 280 S.C. 453, 459, 313 S.E. (2d) 316, 319 (Ct. App. 1984). The power to pierce the corporate veil is to be exercised with reluctance and caution. *DeWitt, supra. Baker v. Equitable Leasing Corp., supra,* further elucidates the issue:

> [D]ifferent legal corporations actually are regarded as distinct legal entities, and the instrumentality rule should be invoked only with mature consideration and caution. According to may decisions it is not sufficient merely to show that one corporation is the adjunct or instrumentality of another but it must further appear that the retention of separate corporate personalities would promote fraud, wrong, or injustice or contravene public policy. 18 C.J.S. *Corporations*, § 7, p. 384.

*Baker*, 275 S.C. at 367-68, 271 S.E. (2d) at 600.

"The corporate form may be disregarded only where equity requires the action to assist a third party." *Woodside v. Woodside*, 290 S.C. 366, 370, 350 S.E. (2d) 407, 410 (Ct. App. 1986). The party asserting that the corporate veil should be pierced has the burden of proof. *Id.*

In *Sturkie v. Sifly, supra*, the Court of Appeals set forth a two-pronged test to be used to determine whether to pierce the corporate veil. "The first prong is an eight factor analysis of the shareholder's relationship to the corporation and looks to the observance of the corporate formalities by the dominant shareholders." *Dumas v. InfoSafe Corp.* — S.C. —, —, 463 S.E. (2d) 641, 643 (Ct. App. 1995). The factors are:

(1) whether the corporation was grossly undercapitalized;

(2) failure to observe corporate formalities;

(3) non-payment of dividends;

(4) insolvency of the debtor corporation at the time;

(5) siphoning of funds of the corporation by the dominant stockholder;

(6) non-functioning of other officers or other directors;

(7) absence of corporate records; and

(8) the fact that the corporation was merely a facade for the operations of the dominant stockholder.

*Dumas,* — S.C. at —, 463 S.E. (2d) at 644. "The conclusion to disregard the corporate entity must involve a number of the eight factors, but need not involve them all." *Id.*

The second prong of *Sturkie* requires a plaintiff to "prove the 'fundamental unfairness' of recognizing the corporate veil .…" *Multimedia Publishing v. Mullins,* 314 S.C. 551, 553, 431 S.E. (2d) 569, 571 (1993). The burden of proving this fundamental unfairness requires the plaintiff to "establish that (1) the defendant was aware of the plaintiff's claim against the corporation, and (2) thereafter, the defendant acted in a self-serving manner with regard to the property of the corporation and in disregard of the plaintiff's claim in the property." *Dumas,* — S.C. at —, 463 S.E. (2d) 644.

The preponderance of the evidence does not establish the existence of a sufficient number of the eight factors to satisfy the first prong of the test. Richard Friedberg stated Royal Promotions was organized in 1991 and he owned all the stock in the company. Royal Promotions did not own any real property or have any permanent employees. However, it hired per diem employees for the various promotions. Mary Feldman was President of Royal Promotions. Royal Promotions acted as the general partner in several limited partnerships for promotional events held in Charleston at the King Street Palace, which is owned by Carolina Film South Corporation. Friedberg and his wife own eight-five percent of the stock in Carolina Film South Corporation. Friedberg prepared the financial reports for the two limited partnerships.

The Limited Partners had the burden of proving that Royal Promotions' corporate identity should be disregarded in order to impose individual liability on Friedberg. After reviewing

the record, I conclude the Limited Partners failed to establish the existence of a sufficient number of factors to satisfy the first prong of the *Sturkie* test. Further, the evidence is insufficient to pierce the corporate veil and hold Friedberg individually liable. Accordingly, I would not address the second prong of the test concerning fundamental unfairness.

## *IMPLIED AGREEMENT TO SHARE LOSSES*

The appellant also argue the master erred in finding that the parties' agreement to share profits on a one-third/two-thirds basis was an implied agreement to share losses in the same proportion. Appellants argue the general partner has no obligation for any losses until the limited partners' capital contributions are exhausted.[1] I would affirm the master on this issue.

Each of the four Limited Partners signed a subscription agreement for the two limited partnerships which provided he would be entitled to half of the net profits, if any, from such production after all costs and expenses were paid by the general partner. According to the presentation for the limited partnerships, net profits would be distributed at a ratio of $66^2/_3\%$ to the general partner and $33^1/_3\%$ to the limited partners. The master held there was no specific provision in the presentation which addressed accounting for losses and, therefore, he concluded the agreement to share profits implied an agreement to share losses on the same basis.

Pursuant to S.C. Code Ann. § 33-42-830 (Rev. 1990), "[t]he profits and losses of a limited partnership must be allocated among the partners, and among classes of partners, in the manner provided in writing in the partnership agreement. If the partnership agreement does not so provide in writing, profits and losses shall be allocated on the basis of the value ... of the contributions made by each partner to the extent they have been received by the partnership and have not been returned." The Record on Appeal does not contain a written

---

[1] The appellants argue the master held the net loss for Fight Night No. 6 was $14,512.64 and the net loss for Shag Musical Review was $18,874.28. They contend the Limited Partners are required to suffer the full extent of these losses from their investments leaving a balance due to the Limited Partners on the Fight Night partnership of $8,487.36 and $1,125.72 on the Shag Musical Review.

partnership agreement for the limited partnerships.[2] Kevin Baltimore testified Richard Friedberg verbally advised the Limited Partners the general partner was going to come up with the same amount of money they were investing. Baltimore also testified Friedberg represented to them the general partner would lose its money first before the limited partners. Friedberg testified he never represented that Royal Promotions was going to be responsible for payment of half of the expenses of the promotions or that it was going to bear any of the risk of the expenses. Given the conflicting testimony and the lack of a written partnership agreement, I find no error in the master's conclusion that the parties had an implied agreement to share losses on the same proportion as profits.

---

[2] The certificate of limited partnership filed with the South Carolina Secretary of State is distinguishable from the partnership agreement. *See* S.C. Code Ann. & 33-42-210 (Rev. 1990).