504 S.E.2d 117

**Regina L. STROTHER and Douglas Strother, Petitioners,**

v.

**LEXINGTON COUNTY RECREATION COMMISSION, Respondent.**

**No. 24823.**

Supreme Court of South Carolina.

Heard March 5, 1998.

Decided July 27, 1998.

Rehearing Denied Aug. 26, 1998.

H. Patterson McWhirter and Stephen B. Samuels, both of McWhirter, Bellinger & Associates, Lexington, for petitioners.

Patrick J. Frawley, of Nicholson, Davis, Frawley, Anderson & Ayer, L.L.P., Lexington, for respondent.

BURNETT, Justice:

Regina and Douglas Strother (petitioners) brought this negligence action against Lexington County Recreation Commission (respondent) alleging Regina Strother was injured when she tripped over a sprinkler head while playing softball on one of respondent's fields. The Court of Appeals upheld the circuit court's grant of summary judgment in favor of respondent. *Strother v. Lexington County Recreation Comm'n,* 324 S.C. 611, 479 S.E.2d 822 (Ct.App.1996) (Anderson, J., dissenting). We affirm as modified.

## *FACTS*

Respondent operates the Pine Grove Softball Complex. While Regina Strother was playing softball at the complex in May 1992, she attempted to catch a fly ball in the outfield, and in the process tripped over a "popped-up" water sprinkler head and twisted her left knee.

The softball complex contains five softball fields which are each equipped with a sprinkler system using the Rainbird R-70 (R-70) pop-up sprinkler heads. Respondent installed the sprinkler system in the fall of 1991. The sprinkler system waters each of the zones of the fields in thirty minute intervals every night. Petitioners alleged the sprinkler head on which she tripped was defective because it failed to retract.

Respondent moved for summary judgment asserting it did not have actual notice of the alleged defect or the opportunity to correct the defect as required by S.C.Code Ann. § 15–78–60(16) (Supp.1997). Respondent presented the depositions of four of its maintenance personnel to support its claim.

David Hendricks, the Director of Facilities and Maintenance for the Lexington County Recreation and Aging Commission, was in charge of maintenance at the ball field. He started working with pop-up head sprinkler systems in 1984 or 1985 at

Oak Grove, another Lexington County recreation facility. Since 1987, Hendricks has been aware that some types of "pop-up head sprinkler systems sometimes pop up when the water goes on and when it goes off, they don't go back down." He had no knowledge any sprinkler head at Pine Grove had ever failed to retract.

Earl Smith, maintenance supervisor for the Lexington County Recreation and Aging Commission, testified, before petitioner's accident, he was aware pop-up sprinkler heads would sometimes pop up but not retract when the water was turned off. He learned this from working with other sprinkler systems owned by the county. He first became involved with Rainbird sprinkler systems in 1984 at Oak Grove. Smith testified the only problem he experienced with Rainbird sprinklers was occasional clogging after initial installation. He also testified he had problems at Oak Grove with other sprinkler systems which would pop up but not retract; however, he had never experienced this problem with a Rainbird sprinkler system. He was not aware of any retraction failure of sprinkler heads at Pine Grove. Smith testified, for purposes of repair, most systems are similar; however, the types of systems installed on the other softball fields are "not the same thing" as the R–70. According to Smith, the maintenance workers for each field were responsible for ensuring sprinkler heads were down before players used the fields, but there was no formal inspection procedure.

Jerry Zenoni, the person who actually maintained Pine Grove, was not aware of any sprinkler heads failing to retract.[1] Zenoni testified he never checked to see if the sprinkler heads were down and was never told to do so. Thomas Davis, another maintenance worker, testified he had never seen a sprinkler head fail to retract.

Petitioners argued respondent had actual notice because the maintenance workers had general knowledge pop-up heads on some sprinkler systems did not always retract. They further argued actual notice of the defect in the R–70 sprinkler system could be implied, and maintenance workers should

---

1. Zenoni admitted since this incident he had noticed some of the R–70 sprinkler heads failing to retract at the Pine Grove Softball Complex.

have devised a system to check the sprinkler heads. Petitioners presented three affidavits to support their position.[2]

Petitioners submitted two affidavits of personnel assigned to maintain the athletic fields at the University of South Carolina. These affiants indicated they were familiar with pop-up sprinkler systems and that "occasionally the heads pop up and do not go back down." These affiants testified they do not allow use of the athletic fields until the fields have been checked for protruding sprinkler heads.

Petitioners also submitted an affidavit from Jay Corley, an employee of the company which sold the R–70 to the contractor who installed the system for respondent. Mr. Corley stated he is familiar with pop-up sprinkler systems because of his nine years experience working in design and sales for a Rainbird dealer. He indicated he had knowledge of problems with sprinkler systems including the fact that "seldomly [sic] the heads pop up and do not go back down," and that had anyone called the company to inquire, the problem would have been explained to them.

The trial judge granted respondent's motion for summary judgment finding respondent did not have actual notice the sprinkler head involved in the incident failed to retract or that there had been problems with the sprinkler heads at this particular ball field.

The Court of Appeals affirmed finding petitioners did not show respondent had actual notice of a defect in the sprinkler system. *Strother, supra.* The Court of Appeals found the general knowledge that some types of pop-up sprinkler systems sometimes failed to retract was insufficient to provide

---

**2.** Respondent argues the affidavits submitted by petitioners failed to meet the requirements of Rule 56(e), SCRCP, because the affidavits failed to set forth specific facts indicating the affiants were sufficiently familiar with the R–70 sprinkler system to allow them to comment on the problems of the system and to render opinions as to what the maintenance workers should have known with respect to the sprinkler system. We agree with the Court of Appeals' resolution of this issue. 479 S.E.2d at 827, fn. 1. The court found the trial judge did not abuse his discretion in admitting these affidavits based on the affiants' experience and familiarity with sprinkler systems. *See Hoeffner v. The Citadel,* 311 S.C. 361, 429 S.E.2d 190 (1993) (a trial court's ruling on the admission of evidence will not be disturbed on appeal absent an abuse of discretion amounting to an error of law).

actual notice of the defect. The court concluded actual notice under § 15–78–60(16) means express notice thus eliminating the option of proving actual notice by circumstantial evidence. *Id.* Judge Anderson dissented finding this general knowledge was sufficient to provide actual notice of the defect. Judge Anderson found this case fell within the definition of "implied actual notice" which, in his opinion, South Carolina should recognize as a definition of actual notice. *Id.*

## ISSUE

What constitutes actual notice under the South Carolina Tort Claims Act, S.C.Code Ann. § 15–78–60(16) (Supp.1997) (the Act)?

## STANDARD OF REVIEW [3]

■■■ Summary judgment is appropriate where it is clear there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. *Hamiter v. Retirement Division of South Carolina,* 326 S.C. 93, 484 S.E.2d 586 (1997). In determining whether any triable issues of fact exist, the evidence and all inferences which can be reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party. *Id.*

## DISCUSSION

■■■ Petitioners argue the Court of Appeals misapplied the requirement of actual notice found in § 15–78–60(16)

---

**3.** In their brief, petitioners raise the question of who has the burden of proving actual notice. Petitioners claim because respondent is asserting an affirmative defense under the Act, respondent has the burden of proving it had no actual notice of the defect. For purposes of summary judgment, the moving party has the burden of proving no material fact exists. *Standard Fire Co. v. Marine Contracting & Towing Co.,* 301 S.C. 418, 392 S.E.2d 460 (1990). Once a party moving for summary judgment carries the initial burden of showing an absence of evidentiary support for the nonmoving party's case, the nonmoving party may not simply rest on mere allegations or denials contained in the pleadings. *Baughman v. American Tel. and Tel. Co.,* 306 S.C. 101, 410 S.E.2d 537 (1991). Whether petitioners or respondent would have the burden of proving actual notice at trial is not an issue before this Court. However, usually the plaintiff has the burden of establishing notice in a negligence action. *See Simmons v. Winn–Dixie Greenville, Inc.,* 318 S.C. 310, 457 S.E.2d 608 (1995); *Baugh & Sons Co. v. Graham,* 150 S.C. 398, 148 S.E. 220 (1929).

(Supp.1997).[4] According to petitioners, respondent had actual notice of a defect in other pop-up sprinkler systems. Therefore, actual notice of the defect in the system that caused the accident could be implied. The petitioners contend a reasonable inquiry into whether the R–70 had problems similar to other pop-up sprinkler systems would have revealed the problem.

The Act precludes liability for "maintenance, security, or supervision of any public property, intended or permitted to be used as a park, playground, or open area for recreational purposes, unless the defect or condition causing a loss is not corrected by the particular governmental entity ... within a reasonable time after *actual notice* of the defect or condition." S.C.Code Ann. § 15–78–60(16) (Supp.1997) (emphasis added). Other provisions of the Act impose liability if the governmental entity has *actual or constructive notice. See* S.C.Code Ann. § 15–78–60(10) & (15). The Act does not define actual notice and no South Carolina case has construed actual notice within the context of the Act.

 The cardinal rule of statutory construction is to ascertain and effectuate the legislative intent whenever possible. *Joint Legislative Comm. v. Huff,* 320 S.C. 241, 464 S.E.2d 324 (1995). If a statute's language is plain and unambiguous and conveys a clear and definite meaning, there is no occasion for employing rules of statutory interpretation and the court has no right to look for or impose another meaning. *City of Columbia v. ACLU of S.C., Inc.,* 323 S.C. 384, 475 S.E.2d 747 (1996). When faced with an undefined statutory term, the court must interpret the term in accord with its usual and customary meaning. *Adoptive Parents v. Biological Parents,* 315 S.C. 535, 446 S.E.2d 404 (1994). When constru-

---

4. Petitioners also argue because respondent created the defective condition by installing the pop-up head sprinkler system at Pine Grove, no actual notice of the defect was required. Petitioners failed to preserve this issue for review because they did not raise the issue below. *Jackson v. Speed,* 326 S.C. 289, 486 S.E.2d 750 (1997). Further, this argument is without merit. Installation of this sprinkler system did not create a dangerous condition. *Compare with Pinckney v. Winn–Dixie Stores, Inc.,* 311 S.C. 1, 426 S.E.2d 327 (Ct.App.1992) (knowledge could be inferred where the store owner created the dangerous situation by placing the poinsettias near the front of the store and the leaves were dropping on the floor).

ing a limitation or exemption to liability under the Act, the provision must be liberally construed in favor of limiting the liability of the governmental entity. S.C.Code Ann. § 15–78–20(f) (Supp.1997).

Although we agree with the conclusion reached in the majority opinion of the Court of Appeals, that petitioners failed to show respondent had actual notice of the defect, the court's opinion has unduly complicated the definitions of actual and constructive notice. While the Court of Appeals acknowledged several cases in South Carolina have distinguished between actual notice and constructive notice,[5] the majority opinion perceived an inconsistency in the use of the terms constructive/inquiry notice and actual notice in our case law. According to the court, our cases have altered the meaning of these terms "to the point of equating inquiry notice with actual notice." *Strother*, 324 S.C. at 616, 479 S.E.2d at 825.

We disagree with this interpretation of our case law. While inquiry/constructive notice has served in some contexts as a sufficient substitute for actual notice, it is not the same as actual notice.[6] Our case law has stated inquiry notice

---

5. *Government Employees Ins. Co. v. Chavis,* 254 S.C. 507, 176 S.E.2d 131 (1970) (Brailsford, J., dissenting) (inquiry notice is constructive notice and actual notice means all facts are disclosed and there is nothing left to investigate); *Campbell v. S.C. Highway Dep't,* 244 S.C. 186, 135 S.E.2d 838 (1964), *overruled to the extent it holds an action may not be maintained against the State without its consent, McCall by Andrews v. Batson,* 285 S.C. 243, 329 S.E.2d 741 (1985); *McGee v. French,* 49 S.C. 454, 27 S.E. 487 (1897).

6. Actual notice means all the facts are disclosed and there is nothing left to investigate. *Government Employees Ins. Co. v. Chavis,* 254 S.C. 507, 176 S.E.2d 131 (1970) (Brailsford, J., dissenting). Notice is regarded as actual where the person sought to be charged therewith either knows of the existence of the particular facts in question or is conscious of having the means of knowing it, even though such means may not be employed by him. 58 Am.Jur.2d *Notice* § 5. Generally, actual notice is synonymous with knowledge. *Hannah v. United Refrigerated Services., Inc.,* 312 S.C. 42, 430 S.E.2d 539 (Ct.App.1993). Constructive notice is a legal inference which substitutes for actual notice. It is notice imputed to a person whose knowledge of facts is sufficient to put him on inquiry; if these facts were pursued with due diligence, they would lead to other undisclosed facts. Therefore, this person is presumed to have actual knowledge of the undisclosed facts. *Multimedia Publishing of South Carolina, Inc. v. Mullins,* 314 S.C. 551, 431 S.E.2d 569 (1993); *Government Employees Ins. Co. v. Chavis,* 254 S.C. 507, 176

is equivalent [7] to actual notice. *Huestess v. South Atlantic Life Ins. Co.*, 88 S.C. 31, 70 S.E. 403 (1911) (inquiry notice is equivalent to actual notice); *Government Employees Ins. Co. v. Chavis*, 254 S.C. 507, 176 S.E.2d 131 (1970) (Brailsford, J., dissenting); *Fuller–Ahrens Partnership v. S.C. Dep't of Highways & Public Transp.*, 311 S.C. 177, 427 S.E.2d 920 (Ct.App. 1993) (Cureton, J., concurring and dissenting) (inquiry notice may be equivalent to actual notice). However, in these cases, the appellate courts are simply referring to the fact that inquiry notice can have the same effect as actual notice, not that inquiry notice is actual notice. In our opinion, our appellate courts have consistently distinguished between actual notice and constructive/inquiry notice.

The Court of Appeals then defines actual notice by dividing it into two categories: express and implied. Express notice is defined as "embrac[ing] not only knowledge, but also that which is communicated by direct information, either written or oral, from those who are cognizant of the fact communicated." *Black's Law Dictionary* 1062 (6th ed.1990); *see also* 58 Am. Jur.2d *Notice* § 6 (express actual notice includes direct information). Implied actual notice is defined as "a kind of actual notice which consists of knowledge of facts so informing that a reasonably cautious person would be led by them to the ultimate fact; that which, if prosecuted with ordinary diligence, will furnish information of fact." 66 C.J.S. *Notice* § 5 (1990); *see also Black's Law Dictionary* 1062 (6th ed.1990) (implied notice is also defined as "one of the varieties of actual notice (not constructive) and is distinguished from 'express' actual notice. It is notice inferred or imputed to a party by reason of his knowledge of facts or circumstances collateral to the main fact, of such a character as to put him upon inquiry, and which, if the inquiry were followed up with due diligence, would lead him definitely to the knowledge of the main fact.").

In our opinion, the definition of implied actual notice blurs the distinction between actual and constructive notice because

---

S.E.2d 131 (1970) (Brailsford, J., dissenting) (inquiry notice is constructive notice); 58 Am.Jur.2d *Notice* §§ 8–12; *Black's Law Dictionary* 1062 (6th ed.1990).

**7.** Equivalent means "equal in … effect …." *Black's Law Dictionary* 541 (6th ed.1990).

it appears to impose a duty to inquire. Our case law does not support this type of implied actual notice. Instead, under our case law, this type of implied actual notice is classified as constructive notice because of the duty to inquire. *See Government Employees Ins. Co. v. Chavis, supra.* Further, because we are to liberally construe the Act's provisions limiting liability in favor of the government, we refuse to adopt such a broad definition of actual notice which would classify this definition as a part of actual notice.

The Court of Appeals then concluded the legislature intended "to limit the exposure of the governmental entity to situations involving *express notice,* thus excluding a duty of inquiry." *Strother,* 324 S.C. at 619, 479 S.E.2d at 826 (emphasis added). In our opinion, the court's decision erroneously eliminates the option of proving actual notice by the factual circumstances of the case (circumstantial evidence). We find, in the context of the Act, actual notice means all the facts are disclosed and there is nothing left to investigate. *Government Employees Ins. Co. v. Chavis,* 254 S.C. 507, 176 S.E.2d 131 (1970) (Brailsford, J., dissenting). Actual notice may be shown by direct evidence or inferred from factual circumstances. *Southern Railway–Carolina Division v. Horne Investment Co.,* 233 S.C. 440, 105 S.E.2d 527 (1958) (notice may be inferred from the facts in evidence); *Fuller–Ahrens Partnership v. S.C. Dep't of Highways & Public Transp.,* 311 S.C. 177, 427 S.E.2d 920 (Ct.App.1993) (Cureton, J., concurring and dissenting) (actual notice may be inferred from the circumstances); *Bryant v. City of North Charleston,* 304 S.C. 123, 403 S.E.2d 159 (Ct.App.1991) (can infer actual notice from the evidence); 58 Am.Jur.2d *Notice* §§ 5–7 (1989).

However, we agree with the result reached by the Court of Appeals. The depositions submitted by respondent proved it had no actual notice of the defect and petitioners failed to present any evidence creating a genuine question of material fact on this issue. Petitioners did not prove respondent knew this R–70 system was defective or prove this system is so similar to the other troublesome systems that actual notice could have been inferred from the circumstantial

evidence. Therefore, summary judgment was properly granted in favor of respondent.

**AFFIRMED AS MODIFIED.**

FINNEY, C.J., TOAL, MOORE and WALLER, JJ., concur.