**OCEAN WINDS COUNCIL OF CO–OWNERS, INC., Plaintiff,**

v.

**AUTO–OWNERS INSURANCE COMPANY, Defendant.**

No. CIV.A.2:98–2970–18.

United States District Court, D. South Carolina, Charleston Division.

Dec. 16, 2002.

William Jefferson Leath, Jr., Timothy David St. Clair, Charleston, SC, for plaintiff.

Walter Henry Bundy, Jr., Mt. Pleasant, SC, Mark Crawford, Jems Dowell Gandy, III, John C. Hayes, IV, Robert H. Hood, Charleston, SC, for defendant.

## ORDER

NORTON, District Judge.

### I. Background

This is a first-party insurance action brought by the insured, Ocean Winds Council of Co–Owners, Inc. ("Ocean Winds"), against its insurer, Auto–Owners Insurance Co. ("Auto Owners"). The following facts are undisputed. Ocean Winds is the owner of a condominium complex that was insured from July 1993 to July 2001 under a policy issued by Auto–Owners. Ocean Winds filed a claim with Auto Owners on October 27, 1997, requesting payment for water and termite damage to the buildings under the following "collapse" provision in the insurance contract:

5. Additional Coverages

d. Collapse

We will pay for loss or damage caused by or resulting from risks of direct physical loss involving collapse of a building or any part of the building caused only by one or more of the following:

. . . . .

(2) hidden decay;

(3) hidden insect or vermin damage

. . . . .

Collapse does not include settling, cracking, shrinkage, bulging, or expansion.

After Auto Owners did not pay the claim, Ocean Winds filed suit on September 4, 1998, in state court alleging the following causes of action: bad faith refusal to pay benefits; breach of contract; improper claims practices in violation of S.C.Code § 38–59–20 (West 2002); and attorneys' fees under S.C.Code § 38–59–40 (West 2002).[1]

After defendant removed the action, this court certified the following question to the South Carolina Supreme Court:

In order to trigger coverage [under the policy quoted above], is it required: 1) that the building or part of the building fall to the ground or be reduced to flattened rubble; or 2) that the building manifest substantial structural impairment, but has not yet fallen to the ground or been reduced to flattened rubble.

The South Carolina Supreme Court held on June 17, 2002, that "a requirement of imminent collapse is the most reasonable construction of the policy clause covering 'risks of direct physical loss involving collapse.' We define imminent collapse to mean collapse is likely to happen without delay." *Ocean Winds Council of Co–Owners, Inc. v. Auto–Owner Ins. Co.*, 350 S.C. 268, 565 S.E.2d 306, 308 (2002). During the time in which the certified question was pending, plaintiff paid to have the buildings repaired at a cost of $582,494.52. (Pl's.Mem.Opp.Summ. J. Ex. A.)

### II. Summary Judgment Standard

Summary judgment shall be granted when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "At the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). There is no require-

---

1. The Complaint also included a request for a declaratory judgment, which was later withdrawn.

ment that the trial judge make findings of fact. *Id.* at 250, 106 S.Ct. 2505. Rather, the threshold inquiry is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* In other words, "to grant summary judgment the court must determine that no reasonable jury could find for the nonmoving party on the evidence before it." *See Perini Corp. v. Perini Const., Inc.,* 915 F.2d 121, 124 (4th Cir.1990). An issue of fact concerns material facts only if establishment of the fact might affect the outcome of the lawsuit under governing substantive law. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. All facts and reasonable inferences therefrom are viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed. R.Civ.P. 56(c)). Once this burden has been met, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting Fed.R.Civ.P. 56(e)); *see also Pleasurecraft*

*Marine Engine Co. v. Thermo Power Corp.,* 272 F.3d 654, 658 (4th Cir.2001).

### III. Law/Analysis

#### A. Breach of Contract

 Defendant argues that there is no genuine issue of material fact whether the buildings were in danger of "imminent collapse" as defined by the South Carolina Supreme Court. As an initial matter, the parties differ on the standard set forth by the South Carolina Supreme Court. Plaintiff highlights a passage from the court's opinion that says the policy "appears to cover even the *threat of loss from collapse.*" 565 S.E.2d at 308 (emphasis added). Plaintiff is correct that the court used this language to explain that actual collapse was not necessary to trigger coverage under the policy. *Id.* However, the court further defined this "threat" to include only "imminent collapse," which means "collapse is likely to happen without delay." *Id.* The court explained that "collapse coverage should not be converted into a maintenance agreement by allowing recovery for damage which, while substantial, does not threaten collapse." *Id.* Thus, the precise standard set forth by the South Carolina Supreme Court is whether the buildings were under a threat of "imminent collapse," which means "collapse is likely to happen without delay." *Id.*

Applying this standard, defendant points to the following passage from plaintiff's expert, Mr. Peter E. Sherrat: "I am not sure whether imminent means tomorrow or not, but in a short timeframe. And whether that timeframe is in three months or six months, but it was not at the stage meaning the next day I thought it was going to fall down."[2] In addition, defen-

---

**2.** Defendant quoted this passage in its Memorandum of Law in Support of Its Motion For Summary Judgment, but did not cite the deposition page number. However, plaintiff has not contested its accuracy.

dant argues that in the five years between the time the suit was filed and the repairs were made, the buildings did not collapse and were never vacated for safety reasons. Plaintiff submits affidavits from Robert Norman, Robert Sisnroy, and Brett E. Carlson purporting to show that the collapse of the buildings was imminent. (Pl's Opp. Mem. Exs. A, B. and C.) However, defendant points out that each of these affiants testified that the buildings were under a threat of collapse with *a significant weather or seismic event.* (Nornan Aff. ¶ 12, Sisnroy Aff. ¶ 5; Carlson Aff. ¶ 4.) This testimony is not sufficient to create a genuine issue of material fact whether the buildings were faced with "imminent collapse without delay." Many buildings are subject to collapse in the event of a "significant weather or seismic event." This type of structural threat, although it may be serious and require repair, does not rise to the level of "imminent collapse" as defined by the South Carolina Supreme Court. Therefore, viewing the evidence in the light most favorable to plaintiff, it has failed to meet its burden of presenting evidence showing there is a genuine issue of material fact whether the condominium complex was under the threat of imminent collapse without delay. As a result, there is no genuine issue of material fact whether defendant breached its insurance contract.

### B. Bad Faith

■ Defendant has moved for summary judgment on plaintiff's bad faith refusal to pay cause of action on the grounds that it cannot be held liable for a bad faith refusal to pay when it had no duty to pay under the contract. Plaintiff argues that even if there was no breach of the insurance contract, defendant exercised bad faith in processing its claim. "[T]here is an implied covenant of good faith and fair dealing in every insurance contract that neither party will do anything to impair the other's rights to receive benefits under the contract." *Tadlock Painting Co. v. Maryland Cas. Co.,* 322 S.C. 498, 473 S.E.2d 52, 53 (1996) (internal citations and quotation marks omitted.) In general, "[a]n insured may recover damages for a bad faith denial of coverage if he or she proves there was no reasonable basis to support the insurer's decision to deny benefits under a mutually binding insurance contract." *Cock–N–Bull Steak House, Inc. v. Gen. Ins. Co.,* 321 S.C. 1, 466 S.E.2d 727, 730 (1996). However, "the benefits due an insured are not limited solely by those expressly set out in the contract." *Tadlock,* 473 S.E.2d at 55. "[T]he covenant of good faith and fair dealing extends not just to the payment of a legitimate claim, but also to the manner in which it is processed." *Mixson, Inc. v. American Loyalty Ins. Co.,* 562 S.E.2d at 662 (citing *Tadlock,* 473 S.E.2d at 52). "[I]f an insured can demonstrate bad faith or unreasonable action by the insurer *in processing a claim* under their mutually binding insurance contract, he can recover consequential damages in a tort action." *Tadlock,* 473 S.E.2d at 53 (quoting *Nichols,* 306 S.E.2d at 619) (emphasis in original). Thus, breach of an express contractual provision is not a prerequisite to bringing a bad faith cause of action. *Tadlock,* 473 S.E.2d at 54.

■ Plaintiff argues that defendant exercised bad faith in its processing of plaintiff's claim. Defendant responds that the delay was caused by Auto Owner's contesting the coverage under the policy. However, plaintiff has submitted expert testimony from Thomas Hesse saying that Auto Owner's (1) failed to provide a copy of the reservation of rights letter to the insured; (2) failed to provide a proof of loss form to the insured as required by it claims handling guidelines manual; (3)

failed to respond to correspondence from the insured attorney; and (4) failed to deny the claim or give any reasons for denying the claim. (Hesse Depo. at 14–15.) Hesse testified that "the biggest evidence of lack of good faith in this case is just the delay in getting this case resolved." (Hesse Depo. at 27.) Hesse further testified that Auto Owner's "never has outright denied the claim or gave [sic] any reason why it was denying the claim." (Hesse Depo. at 15.) In addition, Hesse cited Auto Owners's "attitude about the claim, that they are not there to try to resolve the claim one way or the other. It is trying to find ways to not provide the coverage." (Hesse Depo. at 27.) Specifically, Hesse pointed out that the internal files showed that the Auto Owners was considering using the fact that Ocean Winds had not presented a "proof of loss" as a reason for denying the claim when Auto Owners, when "by both their guidelines and also by the policy, they are the ones that are supposed to provide the proof of loss form to the insured." (Hesse Depo. at 27.) Therefore, Hesse's testimony is sufficient to create a genuine is of fact as to whether defendant acted in bad faith in processing these claims.

■■■■ Defendant suggests that "bad faith refusal to pay benefits" and "breach of the implied warranty of good faith and fair dealing" are separate causes of action. Specifically, defendant argues that a bad faith refusal to pay benefits cause of action requires that benefits be due under the insurance contract, whereas a breach of the implied warranty of good faith and fair dealing cause of action addresses bad faith processing of claims. Accordingly, defendant contends that plaintiff only alleged a bad faith refusal to pay benefits cause of action in its Complaint, but has now at-

tempted to transform this claim into a breach of the implied warranty of good faith and fair dealing cause of action by arguing that the claim was processed in bad faith even if coverage did not exist. However, bad faith refusal to pay benefits and breach of implied warranty of good faith and fair dealing are not separate causes of action. Rather, all bad faith actions—including claims based on bad faith processing of the claims when there is no breach of the insurance contract—arise out of the implied warranty of good faith and fair dealing. *See Tadlock*, 473 S.E.2d at 52–53. Therefore, although the label is admittedly confusing, plaintiff's "bad faith refusal to pay benefits" cause of action, construed under the liberal pleading standards of Fed.R.Civ.P. 8, encompassed its theory that defendant failed to process his claim in good faith even if there were no coverage under the contract.

## C. Improper Claim Practices Act

■■■■ Plaintiff also brought causes of action under sections 38–59–20 and 38–59–40 of the Improper Claim Practices Act ("ICPA"). Section 38–59–20 provides in relevant part: [3]

Any of the following acts by an insurer doing accident and health insurance, property insurance, casualty insurance, surety insurance, marine insurance, or title insurance business, if committed without just cause and performed with such frequency as to indicate a general business practice, constitutes improper claim practices:

. . . . .

(2) Failing to acknowledge with reasonable promptness pertinent communications with respect to claims arising under its policies, including third-party

---

3. The Improper Claims Practices Act contains other provisions, but plaintiff has only pre-

sented evidence in support of provisions two, four and eight. (Hesse Depo. at 15–16.)

claims arising under liability insurance policies.

. . . . .

(4) Not attempting in good faith to effect prompt, fair, and equitable settlement of claims, including third-party liability claims, submitted to it in which liability has become reasonably clear.

. . . . .

(8) Any other practice which constitutes an unreasonable delay in paying or an unreasonable failure to pay or settle in full claims, including third-party liability claims, arising under coverages provided by its policies.

S.C.Code § 38–59–20 (West 2002).

In *Masterclean, Inc. v. Star Ins. Co.*, 347 S.C. 405, 556 S.E.2d 371, 377 (S.C. 2001), the South Carolina Supreme Court held that "third parties do not have a private right of action under S.C.Code Ann. § 38–59–20." Instead, they are entitled to administrative relief before the Chief Insurance Commissioner. 556 S.E.2d at 377. Although this court is not aware of any South Carolina court decision that has specifically held that a first-party claimant also does not have a private right of action under section 38–59–20, some courts have issued broad statements that the Improper Claims Practices Act "does not create a private cause of action." *Gaskins v. Southern Farm Bureau Cas. Ins. Co.*, 343 S.C. 666, 541 S.E.2d 269, 272 (S.C.App.2000) (third-party case); *accord Swinton v. Chubb & Son, Inc.*, 283 S.C. 11, 320 S.E.2d 495, 497 (S.C.App.1984) (holding in a third-party case that § 38–37–1110, the predecessor statute, recodified as § 38–59–20 by 1987 Act No. 155, § 1, "does not establish … a private right of action for any violation thereof") (omis-

sions in original). Further, the text of section 38–59–20 does not draw any distinction between first-party and third-party claims. Thus, this court concludes based on South Carolina court decisions in the third party context that the South Carolina courts would also conclude that section 38–59–20 does not create a statutory private cause of action for first-party claimants.[4]

Plaintiff also seeks attorneys fees pursuant to S.C.Code § 38–59–40 (West 2002), under which "[a]n insurer is liable to the policy holder for all reasonable attorneys' fees for the prosecution of the case against the insurer if the trial judge finds the refusal to pay the policyholder's claim was without reasonable cause or in bad faith." *Mixson*, 562 S.E.2d at 663 (citing section 38–59–40). Determination of an insurer's liability for attorneys' fees pursuant to section 38–59–40 is a matter for decision by the trial judge. *Dorman v. Allstate Ins. Co.*, 332 S.C. 176, 504 S.E.2d 127, 130 (S.C.App.1998) (internal citations omitted). "In making this determination, the trial judge must ascertain whether or not an insurer's refusal to pay a claim was without reasonable cause or in bad faith." *Id.* As explained above, a genuine issue of material facts exists as to whether defendant acted in bad faith in its processing of plaintiff's claim. Thus, the court will determine the issue of attorneys fees at trial.

## III. Conclusion

It is therefore,

**ORDERED,** for the foregoing reasons, that defendant's motion for summary judgment is **GRANTED** as to plaintiff's causes of action for breach of contract and im-

---

4. As explained above, South Carolina courts have expressly recognized a bad faith cause of action for first-party claimants under the

common law, so the significance of an additional statutory cause of action would be limited.

proper claim practices under S.C.Code § 38–59–20.

It is **FURTHER ORDERED** that defendant's motion for summary judgment is **DENIED** as to plaintiff's causes of action for bad faith refusal to pay benefits and attorneys' fees under S.C.Code § 38–59–40.

**AND IT IS SO ORDERED.**