UNIVERSITY MEDICAL ASSOCIATES OF THE MEDICAL UNIVERSITY OF SOUTH CAROLINA; Deborah F. Stanitski, M.D. Plaintiffs,

v.

UNUMPROVIDENT CORPORATION; Unum Life Insurance Company of America; and Provident Life and Accident Insurance Company, Defendants.

No. 2:01–4145–18.

United States District Court,
D. South Carolina,
Charleston Division.

Jan. 21, 2004.

Richard S. Rosen, Andrew D. Gowdown, Rosen Rosen Hagood, Morris Dawes Cooke, Jr., James H. Elliott, Barnwell Whaley Patterson, Helms, Charleston, SC, for plaintiff.

Grady Leslie Patterson, III, Theodore Dubose Willard, Jr., Montgomery patterson Potts, Willard, Columbia, SC, Keith D. Munson, Womble Carlyle Sandridge, Rice, Greenville, SC, for defendant.

## ORDER

NORTON, District Judge.

### I. Background

Dr. Deborah F. Stanitski ("plaintiff" or "Stanitski") is a pediatric orthopedic surgeon employed by the Medical University of South Carolina ("MUSC"). MUSC requires its physicians to join University Medical Associates ("UMA"), the entity which is responsible for the billing and collections related to medical services provided by MUSC physicians. As a member of UMA, plaintiff was insured under a group disability policy. Unum Provident Corporation ("UNUMProvident") is the holding company of Provident Life and Accident Insurance Company ("Provident"), which is the company that issued the group disability policy to UMA. Provident has no employees, however, so UNUMProvident's employees "serviced" the group disability policy issued to UMA by Provident. UNUMProvident is also the holding company for UNUM Life Insurance Company of America ("UNUM Life").

On March 14, 1999, plaintiff suffered a severe brain injury as the result of an accident while she was horseback riding. On July 2, 1999, her attending physician, Dr. Warmoth, completed an Attending Physician Statement of Disability, and on July 16, 1999, a claim was filed with defendant UNUMProvident seeking long term disability benefits. On August 12, 1999, UNUMProvident acknowledged receipt of plaintiff's claim and requested more information from plaintiff regarding her job and medical condition. Plaintiff was not

issued her first check, which came under a reservation of rights, until October 26, 1999.

On November 15, 1999, Pamela Roberts, a member of the Department of Orthopedics at MUSC provided information that plaintiff would be returning to work in that department on January 1, 2000, but only in a very limited capacity because plaintiff remained unable to perform her surgical duties. The parties then began discussions about plaintiff receiving residual benefits based on a continuing, partial disability and the lower earnings expectations that would result. On December 17, 1999, UNUMProvident communicated that a final payment would be made for benefits through March 15, 2000, and that the claim file would then be closed. UNUMProvident took the position that plaintiff had agreed to "advance pay" and closed her claim on December 13, 1999. Plaintiff claims that such a position is false.

Plaintiff expressed her concerns about the closing of her file to UNUMProvident, who told her that she should appeal the decision if she had concerns. The appeals department then told her that the claim was not appropriate for an appeal. After the March 15 time line ran on the advance pay issue, UNUMProvident requested more information from plaintiff before it would resume payments. Subsequently, according to plaintiff, UNUMProvident engaged in a series of delays and redundant requests for information, causing plaintiff to continually fight for her benefits and repeatedly leaving her without payments for substantial periods of time. The final culmination of plaintiff's distress was UNUMProvident's request, on June 25, 2001, for plaintiff to repay UNUMProvident nearly $13,000, which it claimed it had overpaid her as the result of an oversight in not withholding her FICA and Medicare taxes. Both plaintiffs then filed suit on

August 17, 2001, "to recover the disability benefits due to Dr. Stanitski and to see that her payments were made in a timely fashion." (Pls.' Resp. 7.)

Plaintiffs have alleged five causes of action in their amended complaint: 1) breach of contract; 2) breach of covenant of good faith and fair dealings; 3) fraud; 4) violations of South Carolina's Insurance Trade Practices Act; and 5) violations of South Carolina's Claims Practices Act. Defendants have moved for summary judgment on seven grounds: 1) the statutory causes of action provide no private remedies; 2) there is no evidence of fraud 3) two of the defendants are improper parties; 4) there is no evidence of actual or consequential damages; 5) there is no evidence of bad faith 6) no future benefits are recoverable; and 7) there is no evidence of conduct warranting punitive damages.

## II. Standard of Review

Summary judgment is proper only when there is no genuine issue of material fact. FED. R. CIV. P. 56(c). The moving party has the burden of showing the absence of any genuine issue of material fact and that it is entitled to judgment as a matter of law. *Barwick v. Celotex Corp.*, 736 F.2d 946, 958 (4th Cir.1984). In evaluating a motion for summary judgment, the court views the record in the light most favorable to the nonmoving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123–124 (4th Cir.1990).

## III. Legal Analysis

### A. Claims other than for breach of contract and bad faith

Plaintiffs have outstanding claims for violations of South Carolina's Insurance Trade Practices Act, violations of South Carolina's Claims Practices Act, and fraud, in addition to their claims for breach of contract and bad faith. Defendants challenged these additional claims in their mo-

tion for summary judgment, and plaintiffs failed to contest the challenge. (*See* Pls.' Mot. at 7 n.4 (stating that plaintiffs are not pursuing their claims for anything other than breach of contract and bad faith.)) Consequently, defendants' motion as to all claims other than breach of contract and bad faith will be granted.

### B. UNUMProvident and Unum Life Insurance as proper parties

Defendants next argue that Unum Provident Corporation ("UNUMProvident") and Unum Life Insurance Company of America ("UNUM Life") are not proper parties to this lawsuit because they are not parties to the insurance contract at issue in this case; therefore, they are entitled to summary judgment as to all of plaintiffs' claims. It is undisputed that the insurance contract at issue is between Provident Life and Accident Insurance Company ("Provident") and plaintiffs, but plaintiffs argue that UNUMProvident controls Provident to such an extent as to make it a proper party to this action.

■ South Carolina recognizes the concept of "piercing the corporate veil." In South Carolina, an action to pierce the corporate veil is one in equity. *See Sturkie v. Sifly*, 280 S.C. 453, 313 S.E.2d 316 (1984). As their first contention, defendants argue that an intent on the part of plaintiffs to pierce the corporate veil was not articulated in the complaint; therefore, plaintiffs should not be allowed to argue that this court should ignore the corporate form.

■ Plaintiffs referred to defendants collectively throughout the complaint, alleging that all of the defendants undertook the actions that harmed plaintiffs. Furthermore, plaintiffs have submitted that all of their correspondence surrounding Stanitski's insurance claim and this litigation have been marked with UNUMProvident and Provident's identifying marks. These facts combined should have at least put defendants on notice that plaintiffs might attempt to include UNUMProvident in these causes of action. This court operates under a notice pleading system. Piercing the corporate veil is an equitable tool, and this court finds that considering plaintiffs' argument for piercing the corporate veil would not prejudice defendants. As a result, this court now considers plaintiffs' attempt to keep UNUMProvident and UNUM Life in these proceedings.

■ In *Sturkie*, the Court of Appeals of South Carolina set out a two-pronged test for courts to use in determining whether corporate entities should be disregarded. *Id.* at 318–19. The first prong is an eight-factor test designed to analyze the corporation's adherence to the corporate form, and it includes questioning (1) whether the corporation was grossly undercapitalized; (2) its failure to observe corporate formalities; (3) non-payment of dividends; (4) insolvency of the debtor corporation at the time; (5) siphoning of funds of the corporation by the dominant stockholder; (6) non-functioning of other officers or directors; (7) absence of corporate records; and, (8) whether the corporation was merely a facade for the operations of the dominant stockholder. The second prong of the *Sturkie* test mandates that "there be an element of injustice or fundamental unfairness if the acts of the corporation be not regarded as the acts of the [shareholders]." *Id.* at 318.

Plaintiffs allege that all of the agents that handled Stanitski's claims were employees of UNUMProvident. (Pls.' Mot. in Opp. 12.) Provident, the named party on the insurance contract, is a subsidiary of UNUMProvident. (Defs.' Mot. 10.) Plaintiffs further allege that Provident itself has no employees at all. (Pls.' Mot. in

Opp. 12.) Additionally, all of the correspondence from Provident to plaintiffs also bears the name UNUMProvident. *Id.* Plaintiffs have not, however, made any allegations or put forward any evidence that Provident was undercapitalized, that corporate formalities were not observed, that dividends were not paid, that Provident is insolvent, that there was any siphoning of funds, that there was any non-functioning of officers or directors, or that there was any absence of corporate records.

■ "The equitable doctrine of piercing the corporate veil is not to be applied without substantial reflection and the party seeking to have the corporate identity disregarded has the burden of proving the doctrine should be applied." *Wilson v. Friedberg*, 323 S.C. 248, 473 S.E.2d 854, 856 (1996) (citing *Sturkie*, 313 S.E.2d at 318). Plaintiffs have simply not carried their burden. Other courts have looked at this same issue for these same defendants (with some variation) and ruled both ways on the matter. *Compare Simon v. Unumprovident Corp.*, 2002 WL 1060832, *3, 2002 U.S. Dist. LEXIS 9331, 10–11 (E.D.Pa.2002) (citing *Brennan v. Paul Revere Life Ins. Co.*, 2002 WL 54558, 2002 U.S. Dist. LEXIS 446 (N.D.Ill.2002), *and Eldridge v. Provident Companies, Inc.*, 2001 WL 13344, 2001 Mass.Super.LEXIS 5 (Mass.Super.Ct.2001)), *with Wady v. Provident Life and Accident Ins. Co. of Am.*, 216 F.Supp.2d 1060 (C.D.Cal.2002). With regard to the second element of the *Sturkie* test, it is significant in this case that Provident has stipulated that it may be held accountable for the acts of UNUM-Provident's employees insofar as those employees were acting for Provident under its contract with plaintiffs. In other words, since Provident has agreed that it is responsible for the acts of the UNUM-Provident employees that dealt with plaintiffs, any unfairness in recognizing the corporate form is reduced.

Furthermore, plaintiffs did not put forward any evidence or make any allegation as to why UNUM Life should remain a party to this litigation. In fact, plaintiffs conceded at oral argument that there is no reason to keep UNUM Life in this case. As a result, the motions for summary judgment as to both UNUMProvident and UNUM Life will be granted.

## C. Defendant's argument that plaintiffs have no damages

Provident next argues for summary judgment in its favor on the grounds that it has now paid plaintiffs everything plaintiffs are due up to this point under the terms of the policy. Defendant's argument continues that since it has paid all of the actual damages and plaintiffs did not plead any consequential or special damages, all of plaintiffs' causes of action must fail for lack of damages. Plaintiffs' first response is that in actions for bad faith, they are entitled to recover damages beyond the face of the policy, including for emotional and physical distress, legal fees, and "other items of damage." (Pls.' Resp. 8.) Plaintiffs' second response is that they have actual damages under the breach of contract action that have not been compensated by the late payment of the policy demands. Plaintiffs call these damages "consequential damages" and give the interest plaintiff lost by the delay in payment as the only example of such a damage. (Pls.' Resp. 10.)

### i. Consequential damages under an action for bad faith

■ In South Carolina, "[i]f an insured can demonstrate bad faith or unreasonable action by the insurer in processing a claim under their mutually binding insurance contract, [s]he can recover consequential

damages in a tort action." *Ocean Winds Council of Co–Owners, Inc. v. Auto–Owners Ins. Co.,* 241 F.Supp.2d 572, 576 (D.S.C.2002) (quoting *Tadlock Painting Co. v. Maryland Cas. Co.,* 322 S.C. 498, 473 S.E.2d 52, 53 (1996)). Furthermore, "[a]ctual damages are not limited by the contract...[and] if [plaintiff] can demonstrate the insurer's actions were willful or in reckless disregard of the insured's rights, [s]he can recover punitive damages." *Nichols v. State Farm Mut. Auto. Ins. Co.,* 279 S.C. 336, 306 S.E.2d 616, 619 (1983). Additionally, in *State Farm Fire and Cas. Co. v. Barton,* 897 F.2d 729, 732–33 (4th Cir.1990), the Fourth Circuit implicitly recognized that emotional distress damages related to a bad faith cause of action in South Carolina were recoverable when the distress was related to the refusal to pay. For claims, such as this one, based on diversity of citizenship (*see* Court Order denying remand because diversity of citizenship exists, dated February 8, 2002), state law governs the nature of the damages, while the procedure for pleading damages is governed by the Federal Rules of Civil Procedure, specifically, Rule 9(g). *See* 2–9 MOORE'S FEDERAL PRACTICE—Civil § 9.08.

■ Plaintiffs stated in their amended complaint that they had been "damaged, including, but not limited to, mental and emotional distress created by the delay and bad faith refusal to pay, the cost of hiring counsel to pursue the claim, the costs and expenses associated with bringing this action, and the loss of interest on the money owed by the Defendants due to its refusal to timely honor the claim." Even though this statement of damages was made under a cause of action that no longer exists for plaintiffs, it was sufficient to put defendant on notice that plaintiffs were seeking emotional distress damages. As a result, defendant is not entitled to

summary judgment on plaintiffs' bad faith cause of action for lack of damages.

### ii. Damages under breach of contract

Plaintiffs also allege that they are entitled to collect interest on the late payments made to Stanitski under the breach of contract action. In South Carolina, damages recoverable for a breach of contract are those which "follow as a natural consequence of the breach, or which may reasonably be supposed to have been within the contemplation of the parties at the time the contract was entered into." *Hutson v. Continental Assurance Co.,* 269 S.C. 322, 237 S.E.2d 375, 379 (1977). Plaintiffs allege that interest for late payments naturally follows from a breach and was within the contemplation of the parties at the time of the contract. While plaintiffs have generally stated their intent to seek interest in the amended complaint, they have not quantified their prayer for relief. Defendant asserts that without a specific pleading as to interest damage, plaintiffs' cause of action for breach of contract fails for lack of damages.

■ While Rule 9(g) requires items of special damages to be "specifically stated," FED. R. CIV. P. 9(g), when an objection to the specificity of an allegation is raised in a pre-trial motion, the usual remedy is for the federal court to order a more specific statement. *See Parker v. Aetna Life & Cas.,* 791 F.Supp. 175, 178 (W.D.Mich. 1991), *KBT Corp., Inc. v. Ceridian Corp.,* 966 F.Supp. 369, 374, 378 (E.D.Pa., 1997), *Bangert v. Harris,* 553 F.Supp. 235, 238 (M.D.Pa.1982), *Woodmont Corp. v. Rockwood Ctr. Partnership,* 811 F.Supp. 1478, 1484 (D.Kan.1993). Whether or not interest on late insurance payments are within the contemplation of Rule 9(g), plaintiffs have not, thus far, given defendant a way to assess any possible damages against

plaintiffs under this cause of action. Accordingly, this court orders plaintiffs to provide defendant with quantified interest damages, specifically stated, within two weeks from the date of this order.

### iii. Attorneys' fees

Aside from interest, plaintiffs want attorneys' fees. S.C.Code § 38–59–40 provides that an insurer is liable to the policy holder for "all reasonable attorneys' fees for the prosecution of the case against the insurer" if the trial judge finds the refusal to pay the policyholder's claim was "without reasonable cause or in bad faith." S.C. CODE ANN. § 38–59–40. Furthermore, "[d]etermination of an insurer's liability for attorneys' fees pursuant to section 38–59–40 is a matter for decision by the trial judge." *Ocean Winds*, 241 F.Supp.2d at 578 (citing *Dorman v. Allstate Ins. Co.*, 332 S.C. 176, 504 S.E.2d 127, 130 (1998) (internal citations omitted)). To make this determination, the trial judge should decide whether or not an insurer's refusal to pay a claim was "without reasonable cause or in bad faith." *Ocean Winds*, 241 F.Supp.2d at 578. Such a determination is an issue of fact to be decided at trial.

For all of the above reasons, defendant's motion for summary judgment based on plaintiffs' lack of damages must be denied.

### D. Evidence of bad faith

■ Defendant's next argument for summary judgment is that plaintiffs have no evidence of bad faith on the part of defendant. The elements of a cause of action for bad faith refusal to pay first party benefits under a contract of insurance are: (1) the existence of a mutually binding contract of insurance between the plaintiff and the defendant; (2) refusal by the insurer to pay benefits due under the contract; (3) resulting from the insurer's bad faith or unreasonable action in breach of an implied covenant of good faith and fair dealing arising on the contract; (4) causing damage to the insured. *Crossley v. State Farm Mut. Auto. Ins. Co.*, 307 S.C. 354, 415 S.E.2d 393, 396–397 (1992) (citing *Bartlett v. Nationwide Mut. Fire Ins. Co.*, 290 S.C. 154, 348 S.E.2d 530 (1986)). The third element is the subject of defendant's motion. "If there is a reasonable ground for contesting a claim, there is no bad faith." *Crossley*, 415 S.E.2d at 397. When judging whether an insurance company is liable for bad faith denial of benefits, the insurance company's conduct must be judged by the evidence it had before it at the time it denied the claim. *Howard v. State Farm Mut. Auto. Ins. Co.*, 316 S.C. 445, 450 S.E.2d 582, 584 (1994).

■ Plaintiffs allege that defendant took the position that Stanitski had agreed to advanced pay when she had not, resulting in her file being closed and ultimately payments being delayed. (Pls.' Resp. 3.) Plaintiffs allege that defendant repeatedly asked for and received the same information, while claiming that such information was the reason for delay in payments. (Pls.' Resp. 4–6.) Plaintiffs allege that some of defendant's agents told Stanitski that her claim must be appealed while others told her an appeal was not appropriate. (Pls.' Resp. 3.) Viewed in a light most favorable to plaintiffs, these facts could lead a reasonable jury to find bad faith.

### E. Future benefits

Defendant next argues that it is entitled to summary judgment on plaintiffs' claim for future benefits. Plaintiffs agree that they are not entitled to future damages on their breach of contract action, but contend that future damages are appropriate under their claim for bad faith. Plaintiffs seek the entire value of the policy, including the value of future benefit payments.

Their rationale for this claim for relief is that they have been deprived of their peace of mind by defendant's bad faith, and the court would be justified in awarding the full value of the policy rather than "putting Dr. Stanitski back at the mercy of Defendants." (Pls.' Resp. 21.) As authority for their position, plaintiffs cite *Nichols*, 306 S.E.2d at 619, which generally allows for recovery of damages beyond the value of payments already due under the contract, and a California Supreme Court case, *Egan v. Mutual of Omaha Ins. Co.*, 24 Cal.3d 809, 169 Cal.Rptr. 691, 620 P.2d 141, 149 n. 7 (1979), that extends bad faith damages to include the future value of the insurance policy. Plaintiffs also handed up, at oral argument, an unpublished order from this court wherein my brother, Judge Duffy, held that defendants had not "offered a persuasive reason to limit, as a matter of law, the type of consequential damages allowed for bad faith refusal to pay insurance benefits," and thus plaintiff in that case was allowed to seek future policy benefits. *Wright v. UNUM Life Ins. Co. and Lone Star Ins. Co.*, C/A # 2:99–2394–23 at 20–21 (D.S.C.2001).

Defendant relies on cases holding that future insurance benefits cannot be recovered under a breach of contract action, but does not discuss damages in South Carolina under claims of bad faith. *See Odiorne v. Prudential Ins. Co. of Am.*, 176 S.C. 69, 179 S.E. 669, 670 (1935), *O'Dell v. United Ins. Co. of Am.*, 243 S.C. 35, 132 S.E.2d 14 (1963). The court's reasoning in denying future benefits in *Odiorne* centers on the possibility that an insured could recover from disability, and thus reach a stage where benefits are not due. *Odiorne*, 179 S.E. at 670. *O'Dell* clearly contemplates the same scenario in stating that "recovery by the insured is limited to the benefits which have accrued to the time of the commencement of the action, leaving benefits thereafter accruing, *if any*, to be recovered in a subsequent action in the event the defendant fails to pay them." *O'Dell*, 132 S.E.2d at 16 (emphasis added). Those cases have not been overruled in the bad faith context, and the reasoning still seems to apply.

 While it is true that bad faith refusal to pay insurance benefits sounds in tort rather than contract, the tort is necessarily connected with the contract and, as such, the cause of action retains qualities of both. The reasoning in *Odiorne* and *O'Dell* is applicable in the bad faith context because awarding future benefits under the policy is a tricky process bordering on speculation. While it is true that courts and juries are often faced with determining the permanence of disability and the dollar value of an estimated remaining life span, they only do so when the nature of the claim requires it of them. In the instant cause of action, that does not seem to be the case for at least two reasons.

First, defendant has already admitted to liability under the policy, i.e., defendant acknowledges that it owes Stanitski benefits because of her injury. Second, punitive damages are recoverable to punish defendant and deter future wrongdoing. *See State Farm Automobile Ins. Co. v. Campbell*, 538 U.S. 408, 123 S.Ct. 1513, 1519, 155 L.Ed.2d 585 (2003) (noting that the purposes of punitive damages are retribution and deterrence). The damages claimed are those that have resulted from defendant's failure to pay on time and from defendant advancing pretextual reasons why it was not paying on time. It seems that awarding future benefits for these damages would essentially be a punishment inflicted on defendant for acting in bad faith. While bad faith may warrant such punishment, it would seem more prudent to inflict the punishment under the proper heading of punitive damages rather than allowing the recovery of future benefits for "peace of mind." Future actions of bad faith refusal to pay the same benefits

would result in precisely the type of repetitive harm contemplated in *State Farm* as ripe for larger punitive damage awards; therefore, it seems that such a deterrent could restore peace of mind effectively. As a result, this court holds that in a situation such as this one, where the defendant has admitted to liability under the policy, plaintiff cannot recover the future benefits due under an insurance contract in the form of consequential damages. This court finds the reasoning in the *Odiorne* line of cases both applicable and persuasive and notes that for whatever reasons, they were not discussed or brought to Judge Duffy's attention in *Wright.* With all due respect to that order of law, this court finds that existing South Carolina law requires the limiting of consequential damages to exclude future benefits in the narrow context of the instant case.

**F. Punitive damages**

As a final effort at summary judgment, defendant argues simply that there is no clear and convincing evidence that it acted willfully, wantonly, or recklessly in handling plaintiffs' claims. In South Carolina, "the plaintiff has the burden of proving [punitive] damages by clear and convincing evidence." S.C. CODE ANN. § 15–33–135. South Carolina courts have also held that "[i]n order to receive an award of punitive damages, the plaintiff has the burden of proving by clear and convincing evidence the defendant's misconduct was willful, wanton, or in reckless disregard of the plaintiff's rights." *Scott v. Porter,* 340 S.C. 158, 530 S.E.2d 389, 396 (2000) (citing *Lister v. NationsBank of Delaware, N.A.,* 329 S.C. 133, 494 S.E.2d 449, 458 (1997)).

 Plaintiffs have alleged a corporate business plan on the part of defendants to deny benefits to insured persons even where the payment of benefits is clearly warranted. Plaintiffs have produced evidence of such a plan in the form of corporate memos and correspondence. While some of this evidence might be suspect as relevant to the *amount* of punitive damages under *State Farm,* it is at least relevant to defendant's state of mind as willful, creating a jury question on punitive damages.

## IV. Conclusion

It is therefore,

**ORDERED,** for the foregoing reasons, that defendants' motions for summary judgment as to all claims besides bad faith and breach of contract is **GRANTED;** as to all claims against UNUMProvident and UNUM Life is **GRANTED;** and as to future benefits is **GRANTED.** It is further **ORDERED** that defendant's motions for summary judgment as to consequential damages, interest, attorney's fees, bad faith, and punitive damages is **DENIED.** Plaintiffs are **ORDERED** to submit a specific claim for interest to defendant within two weeks of the issuance of this **ORDER.**

**AND IT IS SO ORDERED.**